**STATE of Utah, Plaintiff and Respondent,**

v.

**Kenneth Lee STANDROD, Defendant and Appellant.**

**No. 13959.**

Supreme Court of Utah.

March 5, 1976.

---

7. U.S.C.A., Title 12, Sec. 1819.

James N. Barber and Richard M. Day, Meredith, Barber & Day, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellant was convicted of two counts of murder in the first degree and sentenced to life imprisonment on each count. He appeals claiming double jeopardy, unconstitutionality of statutes, error in the rulings of the court concerning the issue of insanity, error in the giving of instructions, refusal to suppress evidence, and other matters without merit.

The appellant and his fiancee owned a mountain cabin in the process of constructon. There were seven people occupying the various finished portions of the cabin, three men engaged in helping the appellant build the cabin and two transient hitchhikers who had been picked up the day before the killing and invited to spend the night at the cabin.

After breakfast all except the two hitchhikers ingested some drugs. (T.H.C. Tetrahydrocannabinol and cocaine were available to them.)

About 1:00 p. m. the three workmen were working. One of them entered the room where the two hitchhikers were lying on a foam mattress apparently asleep. While he was searching for a tape measure, he heard loud shots behind him. He turned around and saw the appellant standing in front of the two hitchhikers. He saw shots fired and also saw a hole in the temple of the female hitchhiker and numerous gunshot wounds in the midsection of the male hitchhiker.

Another worker, hearing shots, armed himself with a shotgun and entered the cabin. He testified that the appellant had a strange look on his face and said, "So what? You've got a little blood on you," and that the appellant was looking at the bodies of the hitchhikers when he spoke.

The third worker testified that he heard shots, approached the appellant, and asked him why he shot the two people. The ap-

pellant replied, "Oh, it just had to be done." He also testified that appellant's fiancee was questioning the appellant as to why he had shot the people and that appellant only answered, "They will wake up."

Two of the workmen testified that appellant ordered them back to work and picked up a rifle. The two men ran and hid in the woods for a period of time. They later left the state. One went to Washington, the other to Nevada where he notified the police of the killings.

The third workman dug a hole and buried the bodies. He testified that he removed the bloody mattress from the cabin and that appellant washed the blood from the floor.

The police arrived at the cabin the day after the killing, and according to the testimony of the remaining workman the appellant then became agitated and upset and attempted to hide the mattress by covering it with plywood.

The workman, the appellant and his fiancee were all three arrested and charged with murder. Later the workman and the fiancee were granted immunity from prosecution.

Our statute[1] in force at the time provides:

> *Murder in the first degree.*—(1) Criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under any of the following circumstances:
>
> \* \* \* \* \* \*
>
> (b) At the time the homicide was committed the actor also committed another homicide.

■ The appellant contends that by using the killing of the woman as the "other" homicide in the case of the charge for killing the male, it would be double jeopardy to use the killing of the man as the "other" homicide as an element of murder in the first degree in the charge against the woman.

There is no merit to this contention. What the statute says is that where two victims are killed at approximately the same time in one affray, the killings amount to murder in the first degree. The purpose of the statute is to try to overcome the evil done by the United States Supreme Court in its ruling about the death penalty. The thought undoubtedly existing in the minds of the legislators who amended the law was that a multiple killing might seem to one or more of the justices of the high court to be justification for the imposition of the *"not unusual"* death penalty. Of course, if the defendant is acquitted of homicide of all but one victim, then murder in the first degree cannot be found under the statute above set out.

■ In the instant matter there has been no second trial for one offense. There has been one trial for two offenses committed by the appellant. Jeopardy attaches only after a jury is sworn, and the plea can be raised only when a second trial is undertaken. Here only one jury was sworn, and all proceedings were before the one jury. The claim of double jeopardy is not valid.

■ The appellant attacks the death penalty provision of Utah law, but since he was not sentenced to death, he is in no position to urge the unconstitutionality of the statute,[2] and we need not consider it on this appeal.

■ The appellant filed a notice that he would rely on insanity as a defense to the charges. He was sent to the Utah State Hospital for observation for a period of thirty days. He testified at trial about his taking drugs and that he could feel the effects thereof on the day of the killing. He

---

1. 76–5–202(1)(b), U.C.A.1953 as amended (Vol. 8 1975).

2. *Walgreen v. State Board of Equalization,* 70 Wyo. 193, 246 P.2d 767 (1952); 16 Am. Jur.2d, Const.Law 119; *Greaves v. Utah,* 528 P.2d 805 (Utah 1974).

said he cried at the graveside, jumped into the grave and started throwing dirt in the air. He said he was confused and did not have control of himself and things seemed like a nightmare. He testified also that he asked the others to kill him.

The testimony he gave was capable of showing either insanity or diminished ability to form the necessary intent to make out the offense of murder in the first degree.

When the State indicated that it would call the psychiatrist who had observed the appellant at the hospital to show that he was sane at the time of the killing, the appellant's counsel moved to withdraw the insanity plea as a defense. The court denied the motion on the ground that there had been evidence given by the appellant which could have caused a juror to believe that appellant was insane. His counsel then excepted to the ruling and moved the court to declare the appellant sane. The motion was denied, and the psychiatrist was permitted to testify.

We fail to see any error in allowing the doctor to testify that the appellant was sane because that was what he had just asked the court to hold.

The defendant assigns error on the part of the court for failing to tell the jury that "if recklessness or criminal negligence establishes an element of the offense and the actor is unaware of the risk because of voluntary intoxication his unawareness is immaterial in a prosecution for that offense."

The court did instruct that "voluntary intoxication through consumption by the defendant of either alcohol or drugs is not a defense to a criminal charge unless such intoxication negates the existence of the mental state necessary for the commission of the crimes charged or the included offenses."

Both the instruction given and the part not given are contained in Section 76–2–306, U.C.A.1953 as amended (Vol. 8 1975).

It is to be noted that appellant neither requested the court to give the omitted part of the statute nor excepted to the failure of the court to give it.

■ Ordinarily a litigant cannot claim error on an appeal for the failure of the trial court to give an instruction which was not requested and no exception taken to a failure to give it. Where the failure to give an instruction which may cause miscarriage of justice in a criminal case is inadvertently omitted, an appellate court should notice the error of its own accord.

It is a different matter where a defendant does not desire an instruction which might result in a conviction of a lesser and included offense, and prefers to have the jury find either guilty or not guilty of the offense charged. That is a trial tactic which is often used by astute counsel who feel that the jury will not find a defendant guilty of the offense charged but might find him guilty of a lesser offense.[3]

■ In the instant matter there was no evidence of recklessness or criminal negligence. The appellant testified and denied that he killed the hitchhikers. He said he did not know who did shoot them. The appellant may have been under the influence of drugs but, if so, the drugs were voluntarily taken and the court instructed the jury that such would not be a defense to the crime unless it was of such a nature as to negate the existence of a mental state necessary for the commission of the crimes charged or the included offenses. The court instructed on the elements of the included offenses, viz.: second-degree murder and manslaughter. The jury was not left without guidelines in determining what verdict they should render. They apparently believed beyond a reasonable doubt that the appellant shot the couple without any reason for doing it and that while he may have been under the influence of drugs to the extent of not caring what he did, he did know what he was doing when he fired the shots which killed two innocent people.

3. *State v. Poulson*, 14 Utah 2d 213, 381 P.2d 93 (1963).

We see no reversible error in any of the proceedings during the trial, and we therefore affirm the judgment.

CROCKETT, J., concurs.

HENRIOD, C. J., concurs in the result.

TUCKETT, Justice (concurring in the result):

I concur in the result. I cannot agree with the statement in the majority opinion that elimination of the death penalty is evil. Nor can I agree that question of the death penalty is pertinent here where it was not imposed.

MAUGHAN, J., concurs in the views expressed in the opinion of TUCKETT, J.