STATE of Utah, Plaintiff and Appellee,

v.

Roy W. HALL, Defendant and Appellant.

Nos. 890262–CA, 890532–CA.

Court of Appeals of Utah.

Aug. 31, 1990.

Nancy Bergeson (argued), Elizabeth Holbrook (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. Dan Larsen (argued), Asst. Atty. Gen. Governmental Affairs, Salt Lake City, for plaintiff and appellee.

Before DAVIDSON, JACKSON and LARSON[1], JJ.

## OPINION

DAVIDSON, Judge:

Defendant appeals from a judgment and conviction for rape in violation of Utah Code Ann. § 76–5–402, a first degree felony. He argues that the trial court erred by refusing to ask several requested jury voir dire questions, by admitting the victim's hearsay statements, and by imposing sentence in an arbitrary and capricious manner. We reverse.

1. John Farr Larson, Senior Juvenile Judge, sitting by special appointment pursuant to Utah

## FACTS

On March 19, 1988, defendant, while under the influence of alcohol and drugs, entered the bedroom of the victim and awoke her. The defendant and victim had been friends prior to this incident. The victim was 14 years old and suffered from muscular dystrophy and multiple sclerosis, which rendered her unable to walk or speak. Although unable to speak, she was able to communicate with the defendant and did so for approximately thirty minutes before he climbed into bed and raped her. The victim attempted to stop the rape and awake others in the house, but the defendant prevented her. Afterwards, the defendant went to sleep in the front room of the house.

The following morning the defendant was found asleep by the victim's mother, who was not aware of the rape. The victim made no attempt to tell her mother or anyone else of the incident until later that day.

Once the victim's mother learned of the rape, the victim was taken to St. Mark's Medical Center for examination. The medical exam revealed bruises and a tear around her hymen which were consistent with penetration. Defendant was arrested and charged with first degree rape under Utah Code Ann. § 76–5–402 (1990). Defendant testified that he had no recollection of any events on the evening of March 19, 1988. He did, however, remember consuming a large quantity of alcohol and two doses of LSD.

## VOIR DIRE QUESTIONS

Defendant first contends that the trial court's voir dire examination prevented him from exercising his peremptory challenges and challenges for cause in an intelligent manner, thus depriving him of a fair trial.

The purposes of voir dire examination are the detection of actual biases and the collection of data to allow an informed exercise of peremptory challenges. *State*

Code Ann. § 78–3–24(10) (Supp.1989).

*v. Taylor,* 664 P.2d 439, 447 (Utah 1983). Trial courts have broad discretion in managing voir dire, but that discretion must be exercised in favor of allowing discovery of biases or prejudice in prospective jurors. "All that is necessary for a voir dire question to be appropriate is that it allow 'defense counsel to exercise his peremptory challenges more intelligently.'" *State v. Worthen,* 765 P.2d 839, 845 (Utah 1988) (quoting *State v. Ball,* 685 P.2d 1055, 1060 (Utah 1984)). For a court's exercise of discretion in disallowing voir dire questions to be overturned, appellant must show that the abuse of discretion rose to the level of reversible error. *State v. Pascoe,* 774 P.2d 512, 514 (Utah Ct.App.1989). An abuse of discretion occurs when "considering the totality of the questioning, counsel [is not] afforded an adequate opportunity to gain the information necessary to evaluate jurors." *State v. Bishop,* 753 P.2d 439, 448 (Utah 1988).

■ In this case, the court conducted the voir dire. Defense counsel evidently requested the court to ask the jurors additional questions concerning previous leadership experience, experience as jury forepersons, legal studies, military service, and whether any of the prospective jurors had friends or relatives employed in the county attorney's office.[2] These questions were not asked of the jurors.

The jury was then sworn. Defense counsel was allowed to preserve her objections until this time and the trial court acknowledged that the objections would have the same effect had they been raised prior to swearing the jury. When confronted by the objections, the judge stated that he would have asked the question concerning the relationship of the jurors to anyone in the county attorney's office had defense counsel earlier requested that it be asked.[3]

The Utah Supreme Court has stated that:

Although a trial judge has some discretion in limiting voir dire examinations, that discretion should be liberally exercised in favor of allowing counsel to elicit information from prospective jurors. Indeed, the fairness of a trial may depend on the right of counsel to ask voir dire questions designed to discover attitudes and biases, both conscious and subconscious, even though they 'would not have supported a challenge for cause.'

*Worthen,* 765 P.2d at 845 (quoting *Ball,* 685 P.2d at 1060) (citations omitted).

2. Some ambiguity exists in the record concerning defendant's requested voir dire questions. A bench conference between the court and defense counsel took place off the record. From the transcript of the trial following the bench conference, it is obvious that defense counsel's objections adequately preserved defendant's objections to the voir dire questioning. The court specifically allowed defendant to make his objections after the jury had been passed for cause, but before the trial began:

The Court: (to defense counsel) ... Counsel, you indicated you had some motions—or I guess not motions, but some questions on voir dire.
Defense Counsel: Yes. I want to maintain my record, your Honor. I would except—and the court indicated previously that this would have the same force and effect had I objected previously.
The Court: That is correct.
Defense Counsel: I except to the court not asking the following questions: First, with respect to whether or not any of the members of the venire had experience in leadership capabilities, in clubs and organizations. Also, whether or not they had been the forepersons,

those individuals who indicated that they had previously served on a jury, whether or not they had been foreperson on those juries.
Whether or not any individuals had studied law in any capacity. Whether or not any of the individuals on the venire were in the military.
Whether—I believe I would need to check the record. I think the Court asked a related question, but I am not sure. The question is broad, as I requested, and that was whether or not the members of the venire had any friends or associates who were employed in the County Attorney's office. I am not sure about that.
The Court: I didn't ask that question. I didn't go into the County Attorney's office. I wasn't requested to or I would have asked it.
Defense Counsel: You would have asked it?
The Court: I would have asked it.

3. Unfortunately, at this time the court was unable to ask additional questions. Had the jury not been sworn, the court could have asked the question and eliminated the error. *State v. Standrod,* 547 P.2d 215 (1976); *State v. Ambrose,* 598 P.2d 354 (1979) (jeopardy attaches when the jury is sworn).

The court committed error in failing to ask the questions of the potential jurors. In this case, had the questions been asked, it would have been learned that one of the prospective jurors was related by marriage to the Chief Deputy of the Justice Division of the County Attorney's office, the division responsible for prosecuting criminal matters. This prospective juror remained on the panel and was elected as the jury foreperson. We conclude on the basis of these facts that the trial court's failure to ask the requested question was an abuse of discretion and was reversible error. A new trial is necessary.

Since this matter is being remanded for new trial, it is unnecessary to reach the other issues raised.

Reversed and remanded for new trial.

JACKSON and LARSON, JJ., concur.