**Shirley CARRIER, Plaintiff and Respondent,**

v.

**PRO-TECH RESTORATION dba Stone Carpets, William Roger Smith, and The City of Pleasant Grove, Defendants and Petitioners.**

**No. 960118.**

Supreme Court of Utah.

Aug. 8, 1997.

Lynn C. Harris, Provo, and Vicki Rinne, Highland, for Carrier.

M. Dayle Jeffs, Provo, for Pro–Tech Restoration and Stone Carpets.

Robert L. Moody, Provo, for Smith.

John M. Chipman, Salt Lake City, for Pleasant Grove.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

ZIMMERMAN, Chief Justice:

Defendant Pro–Tech Restoration ("Pro–Tech") seeks review of the court of appeals' decision ordering a new trial because the trial court had incorrectly determined that Pro–Tech and defendant William Smith had sufficiently disparate interests to warrant separate allocations of peremptory challenges under rule 47 of the Utah Rules of Civil Procedure. *See Carrier v. Pro–Tech Restoration,* 909 P.2d 271 (Ct.App.1995), *cert. granted,* 920 P.2d 1194 (Utah 1996). Pro–Tech argues that the court of appeals applied the wrong standard of review and incorrectly presumed that allocating too many peremptory challenges to defendants prejudiced plaintiff Shirley Carrier. Pro–Tech further argues that rule 47, as interpreted by the court of appeals, violates constitutional guarantees of due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution, respectively, and the constitutional guarantee of uniform operation of the laws under article I, section 24 of the Utah Constitution. Defendant Pleasant Grove City joins in Pro–Tech's challenge and additionally argues that the court of appeals erred in concluding that all three defendants presented a united front against plaintiff. We affirm.

We begin with a brief review of the facts before addressing the appropriate standard of review and our analysis. This case arose out of an automobile accident between plaintiff Carrier and defendant Smith in Pleasant Grove, Utah. At the time of the accident, Smith was working for Pro–Tech, driving one of its vans south on 500 East as he approached the intersection of 1100 North and 500 East. This intersection was usually controlled by a stop sign on 500 East, but the stop sign was missing on the day of the accident. Carrier, who was driving east on 1100 North, collided with Smith as he crossed the intersection.

Carrier brought a negligence action against Smith, Pro–Tech, and Pleasant Grove City. She sued Smith on the basis of his alleged negligent operation of the van, Pro–Tech on the theory of respondeat superior, and Pleasant Grove on the basis of its alleged negligent failure to maintain the stop sign. Each defendant answered Carrier's complaint by asserting that she was more at fault in causing the accident than they.

Initially, Smith and Pro–Tech were represented by the same attorney. During the early stages of the litigation, Smith left Pro–Tech's employ for reasons unrelated to the instant case. Later, Smith testified at his deposition that Pro–Tech had instructed him to provide false information regarding the accident to place more blame for the accident on Carrier. Pro–Tech denied this charge. Eventually, this dispute with Pro–Tech led Smith to obtain separate counsel.

Prior to trial but after the dispute between Smith and Pro–Tech arose, Carrier moved to limit the number of peremptory challenges to be allotted to defendants under rule 47 of the Utah Rules of Civil Procedure. In her memorandum in support of this motion, Carrier argued that rule 47 requires that co-parties be awarded only one set of peremptory challenges. The trial court denied Carrier's motion and granted each defendant three peremptory challenges for the selection of the main jury panel and one challenge for selecting the alternate juror. Carrier disputed the accuracy of the trial court's ruling as to

Smith and Pro–Tech [1] and requested that the trial court place the reasons for its ruling on the record. In response, the trial court stated, "[T]hey are disparate enough just by the nature of the case to permit [allocating separate sets of peremptory challenges]." Though the trial court relied upon "the nature of the case" to justify its decision, there were no cross-claims between any of the defendants and no counterclaims against plaintiff. Furthermore, "[t]here was no separate, related litigation between any of the defendants." *Id.* at 272.

The case was then tried before a jury. The jury returned a verdict finding Carrier sixty percent negligent, Smith forty percent negligent, and Pleasant Grove free of fault. Carrier moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied these motions. Subsequently, Carrier moved for relief from judgment, arguing that under a recent case issued by this court, the trial court had erred by granting separate sets of peremptory challenges to Smith and Pro–Tech. *See Randle v. Allen*, 862 P.2d 1329 (Utah 1993). The trial court denied this motion.

Thereafter, Carrier filed a notice of appeal and then sought summary disposition from this court. We declined to summarily reverse but instead deferred our ruling "until plenary presentation and consideration of the case." *See* Utah R.App. P. 10(f). After the parties submitted their briefs, we poured the case to the court of appeals.

The court of appeals reversed the trial court's decision to allocate separate peremptory challenges to Smith and Pro–Tech. *Carrier*, 909 P.2d at 276. The court reasoned that under rule 47 and our cases interpreting that rule, there was not a "substantial controversy" between Smith and Pro–Tech,[2] stating:

> At the time the trial court ruled on plaintiff's pretrial motion, it knew no cross-claims had been asserted, had no indication whatsoever that Smith intended to file an

independent suit against Pro–Tech, and had no reason to think there was fundamental incompatibility among defendants in terms of the theories each would advance. On the contrary, defendants jointly urged a single defense: plaintiff was more negligent than Pro–Tech's employee, Smith.

*Id.* at 274–75. Pro–Tech filed a petition for rehearing, which was denied by the court of appeals. Pro–Tech then filed a petition for a writ of certiorari with this court, and we granted the petition. 920 P.2d at 1194.

■ We now address the appropriate standard of review. On certiorari, we review the decision of the court of appeals, not of the trial court. *Butterfield v. Okubo*, 831 P.2d 97, 101 n. 2 (Utah 1992). "We review the court of appeals' decision for correctness and give its conclusions of law no deference." *Newspaper Agency Corp. v. Auditing Div.*, 938 P.2d 266, 267 (Utah 1997) (citing *State v. Christensen*, 866 P.2d 533, 535 (Utah 1993)).

■ The correctness of the court of appeals' decision depends initially upon whether it applied the appropriate standard of review to the trial court's decision. *Id.* The court of appeals characterized the standard of review as follows:

> This appeal turns on the interpretation of Rule 47 of the Utah Rules of Civil Procedure and, thus, presents a question of law. "[W]e accord conclusions of law no particular deference, but review them for correctness."

*Carrier*, 909 P.2d at 272 (quoting *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985)) (additional citation omitted). We conclude that this is a mischaracterization of the effective standard of review: first, because this case does not turn on a single interpretation of the rule's language, but upon a determination of the legal effect of a set of facts; and, second, because in reviewing such a determination, an appellate court must address the appropriate level of discretion that should be

---

1. As to the trial court's decision regarding Pleasant Grove, Carrier's attorney stated, "I clearly will not dispute Pleasant Grove[] City has disparate interests. . . ."

2. The court of appeals did not reach the issue regarding Pleasant Grove because the court concluded that Carrier had waived her objection to giving Pleasant Grove its own set of peremptory challenges. *Carrier*, 909 P.2d at 275.

granted to the trial court's ruling as to the legal effect of those facts. The precise issue presented is one we have not addressed before. Therefore, in the interest of analytical clarity for future cases, we think it important to explicitly discuss it.

■ To explain: The issue presented to the court of appeals was the correctness of the trial court's decision under rule 47 of the Utah Rules of Civil Procedure to allocate separate sets of peremptory challenges to defendants. Rule 47(e) provides, "Each party shall be entitled to three peremptory challenges, except as provided under Subdivisions (b) and (c) of this rule." Utah R. Civ. P. 47(e). Subdivision (c), the focus of the instant dispute, states in relevant part, "Either party may challenge the jurors, but *where there are several parties on either side, they must join in a challenge* before it can be made." *Id.* R. 47(c) (emphasis added). This language appears to give no discretion to the trial court and would therefore seem a pure law question, as the court of appeals suggested. However, in *Sutton v. Otis Elevator Co.*, we construed this language to mean that co-parties are not on the same side of a lawsuit if "there is a *substantial controversy* between them respecting the subject-matter of the suit." 249 P. 437, 457 (Utah 1926) (emphasis added). Under *Sutton*, in deciding whether co-parties are entitled to separate sets of peremptory challenges, the trial court must determine whether a "substantial controversy" exists between them. This determination is a mixed question of fact and law.[3] The trial court must make fact findings as to the nature of any controversy between co-parties and then determine whether those facts meet the legal standard of "substantial controversy." While this ultimate conclusion is one of law and therefore is reviewed for "correctness," *State v. Pena*, 869 P.2d 932, 936 (Utah 1994), that does not answer the question of whether the trial court has any discretion in reaching its conclusion and, if so, how much. For as we explained in *Pena*, recognizing that a determination of the legal effect of a specific set of facts is reviewed for

"correctness" only begins the analysis as to the operative standard of review. *See id.* at 937.

> At this point, we must attempt to determine when the articulated legal rule to be applied to a set of facts—a rule that we establish without deference to the trial courts—embodies a de facto grant of discretion which permits the trial court to reach one of several possible conclusions about the legal effect of a particular set of facts without risking reversal.

*Id.* We have never addressed the question of the discretion allowed a trial court in determining the presence of a "substantial controversy" for rule 47 purposes.

■ In *Pena*, we set forth four factors to determine the appropriate grant of discretion: (i) the complexity and variety of facts underlying the legal rule; (ii) the extent of our experience applying the legal principle and our ability to anticipate and articulate outcome-determinative factors; (iii) the extent to which "the trial judge has observed 'facts[ ]' . . . relevant to the application of the law that cannot be adequately reflected in the record"; and (iv) the strength of any policy considerations supporting narrow discretion. *Id.* at 939. We consider these factors in turn.

We begin with the first *Pena* factor stated in terms of this case: the complexity and variety of facts underlying the rule that co-parties are considered to be on the same side for purposes of allocating peremptory challenges unless there is a "substantial controversy" between them. We find that the facts in a peremptory challenge case are not particularly complex or varying. Indeed, in terms of the *Pena* metaphor, we have fenced off many scenarios that might arise in such cases. *See id.* at 937–38. For example, we stated in *Sutton* that in "cases where defendants are joined, in which one seeks to blame the other for the wrong or injury of which the plaintiff complains[,] . . . there is no substantial reason why the defendants, for purposes of a peremptory challenge, should not

---

**3.** Consequently, the court of appeals erred by characterizing the issue as only a matter of rule interpretation, which is a pure question of law.

be considered as being on the same side." 249 P. at 458. Additionally, we listed several scenarios in *Randle* that will not meet the "substantial controversy" standard. This list, which incorporated the principles announced in *Sutton*, includes separate answers, separate counsel, uncooperativeness, liability shifting, different defenses or claims resting on different facts or legal theories, and derivative cross-claims. 862 P.2d at 1332–33. This list leaves only a few scenarios that can constitute a "substantial controversy."[4] Moreover, the possible scenarios that might meet the "substantial controversy" standard are not particularly complicated. For example, a co-party either has or has not filed a nonderivative cross-claim. *See id.* at 1333. Because the fact patterns in rule 47(c) cases are relatively straightforward and limited, the first *Pena* factor militates for providing the trial court with only limited discretion.

We next address the second *Pena* factor: the extent of our experience applying the "substantial controversy" principle and our ability to predict and state outcome-determinative factors. We first note that *Sutton*, which announced the "substantial controversy" standard for allocating peremptory challenges, was decided in 1926. This legal standard, therefore, is not new to the appellate courts. Second, as discussed above, we have already listed and resolved the outcome of many possible scenarios in rule 47(c) cases, although certainly not all. Consequently, this factor supports granting relatively limited discretion to the trial court.

We now turn to the third *Pena* factor: the extent to which the facts necessary to determine whether a substantial controversy exists involve considerations "that cannot be adequately reflected in the record available to appellate courts." *See Pena*, 869 P.2d at 939. The decision to award additional sets of peremptory challenges under rule 47(c) occurs before the trial begins. Our prior cases indicate that the factual considerations relevant to this decision are those "manifest from the very nature of the case." *See Sutton*,

249 P. at 458. These considerations should be adequately reflected in the record, enabling an appellate court to scrutinize closely whether the facts satisfy the legal standard "substantial controversy." We have fenced off other possible scenarios such as expressed hostility or uncooperativeness between co-parties. *See Randle*, 862 P.2d at 1332–33. As these types of scenarios are irrelevant to the decision whether to award additional sets of peremptory challenges, the trial court is not placed in the position of having to evaluate the credibility of witnesses or make other decisions that will not be adequately reflected in the record. Therefore, this factor favors providing the trial court with limited discretion.

Finally, we consider the fourth *Pena* factor: whether any policy considerations support narrowing the trial court's discretion in allocating separate sets of peremptory challenges. Our prior discussion addressing this issue suggests that we think there are strong factors arguing for narrow discretion. Peremptory challenges are a powerful tool for shaping the jury that hears the case and ultimately determines which side prevails. Therefore, the trial court should avoid lightly giving one side additional challenges. As we noted in *Randle*, "[G]ranting co-parties on one side of a lawsuit additional challenges places the opposing side at a disadvantage." *Id.* at 1333. Consequently, we advised trial judges to "carefully appraise the degree of adverseness among co-parties and determine whether that adverseness truly warrants giving that side more challenges than the other." *Id.* Because allocating additional peremptory challenges to one side of a lawsuit gives that side such a clear advantage in shaping the jury in its favor, and because detecting the actual impact of any specific peremptory is virtually impossible, there is a need to establish uniformity on what situations merit awarding additional peremptory challenges. *See Pena*, 869 P.2d at 939. This interest in establishing uniformity is particularly strong where, as here, the underlying fact patterns are sufficiently manageable that we are able to articulate uniform rules with

---

**4.** One such situation is "when a party on one side of a lawsuit has a cross-claim against a co-party that constitutes, in effect, a separate, dis-

tinct lawsuit from the action existing between the plaintiffs and defendants." *Randle*, 862 P.2d at 1333.

enough clarity for other courts to follow. For these reasons, this fourth *Pena* factor suggests that the trial court should have only limited discretion.

■ All of the *Pena* factors, to one degree or another, support close appellate review of trial court decisions under rule 47(c) of the Utah Rules of Civil Procedure. We conclude, therefore, that the trial court should have limited discretion in its rule 47(c) decisions. On "the spectrum of discretion ..., running from 'de novo' on the one hand to 'broad discretion' on the other," the appropriate discretion on this issue lies close to, although probably not at, the "de novo" end. *See Pena*, 869 P.2d at 937. For this reason, the functional difference between the court of appeals' articulation of the standard of review and the correct standard of review is not substantial, although it certainly could make a difference in a close case. After reviewing the facts, however, we find that this is not a close case.

The trial court decided to allocate separate sets of peremptory challenges to Smith and Pro–Tech. When Carrier challenged this ruling and requested that the trial court explain what it was about Smith and Pro–Tech that made them sufficiently disparate to allocate the additional peremptory challenges, the court responded, "I feel that they are disparate enough, just by the nature of the case, to permit it." The court of appeals correctly noted that co-parties will be considered to be on different sides only if a "substantial controversy" exists between them. *Carrier*, 909 P.2d at 273. Without any additional facts in the record, the court of appeals could only surmise why the trial court concluded that Smith and Pro–Tech were not on the same side of the lawsuit for purposes of rule 47(c).

■ The obvious conflict between Smith and Pro–Tech regarding whether Pro–Tech advised Smith to lie, does not, as a matter of law, constitute a "substantial controversy." Nor does the fact that Smith and Pro–Tech were represented by different attorneys. Defendants presented a united front against Carrier—they both asserted that she was more responsible for causing the accident than they. Furthermore, neither Smith nor Pro–Tech filed a cross-claim against the other or a counterclaim against Carrier, and there was no separate, related litigation between Smith and Pro–Tech. Viewed most favorably to the trial court, these facts fall far short of supporting a finding that a "substantial controversy" existed between Smith and Pro–Tech. Therefore, the court of appeals correctly concluded that the trial court erred by allocating separate sets of peremptory challenges to Smith and Pro–Tech.

We next decide whether the court of appeals correctly concluded that the trial court's error prejudiced Carrier, warranting a new trial. The court of appeals relied upon our discussion of prejudice in *Randle* as a basis for presuming that the trial court's erroneous allocation of peremptory challenges resulted in prejudice. *Id.* at 276. In *Randle*, we stated:

> A side that has additional peremptory challenges has the opportunity to shape the jury to its advantage. Although that self-evident statement does not itself show prejudice, the size of the disparity in the peremptory challenges allowed in this case was significant[, twelve for the defendants and four for the plaintiff]. Requiring a party to show prejudice in such circumstances is to require the impossible. "'To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge[s] performed in accordance with the prescribed rule of the game.'" *Blades v. DaFoe*, 704 P.2d 317, 322 (Colo.1985) (quoting *Kentucky Farm Bureau Mut. Ins. Co. v. Cook*, 590 S.W.2d 875, 877 (Ky. 1979)). Accordingly, we hold that it was prejudicial error for the trial court to grant [the defendants] six peremptory challenges.

862 P.2d at 1334; *see also Sutton*, 249 P. at 458 (stating, without analysis, that trial court's denial of defendant's right to exercise separate peremptory challenges "was prejudicial error"). We then noted that our position of presuming prejudice was consistent with the line of cases originating with *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975),

which announced "the rule that it is reversible error for civil or criminal litigants to be required to use peremptory challenges to remove jurors who should have been removed for cause." *See Randle*, 862 P.2d at 1334 (citations omitted); *see also State v. Menzies*, 889 P.2d 393, 398 (Utah 1994), *cert. denied*, 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995); *Crawford*, 542 P.2d at 1093.

■ Pro-Tech argues that in light of our decision in *Menzies*, which overruled *Crawford*, the court of appeals erred by relying on the quoted portion of *Randle* and presuming prejudice flowed from the trial court's decision to give additional peremptory challenges to defendants. It is true that on the facts of *Menzies*, we rejected *Crawford's* automatic reversal rule. *Menzies* concluded that the presumption of prejudice was inappropriate where "a party is compelled 'to exercise a peremptory challenge to remove a panel member who should have been stricken for cause.'" 889 P.2d at 398 (quoting *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988), and citing *Crawford*, 542 P.2d at 1093). We further noted that over the years, this court's doubts about the policy justifications for the application of the *Crawford* rule in the for-cause error situations resulted in our "straining against [*Crawford's* automatic reversal] requirement by upholding trial courts' questionable for-cause determinations." *Id.* at 400. For this reason, *Menzies* concluded that in such situations, it was best to formally reject *Crawford's* rule.

In *Menzies*, we made no mention of *Randle* or *Sutton* or the presumption of prejudice those cases said applies where there has been a misallocation of peremptory challenges. Pro-Tech argues, however, that the present case "should be no different[ ] [and that] [t]he conclusion of the Court of Appeals that the *Menzies* court overruling *Crawford* did not overrule *Randle* is an improper analysis of the reasoning of this court in *Menzies*." We disagree. The differences between the issues in *Menzies* and those in

*Randle* lead us to conclude that *Menzies* did not overrule *Randle*.

*Menzies* concerned whether prejudice should be presumed when a party is compelled to use a peremptory challenge on a panel member who should have been removed for cause. On the other hand, *Randle* presumed prejudice when a trial court grants one side too many peremptory challenges, giving that side the power to shape the jury to its advantage. Though analogous, in the *Randle* situation the harm is likely greater because of the number of jurors affected. And unlike the *Menzies* situation, the complaining party has no opportunity to correct the consequences of the trial court's error and no grounds for arguing that any of those seated are actually removable for cause. This makes a much stronger case for a presumption of prejudice.

As a fallback, Pro-Tech argues that even if *Menzies* did not directly overrule *Randle*, we should follow the reasoning of *Menzies* and now overrule *Randle*. Pro-Tech asserts simply that "[t]he court in *Menzies* returned to the [*People v. Hopt*, 4 Utah 247, 9 P. 407 (1886), *aff'd*, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708 (1887),] rule which requires proof by appellants of the prejudice from the erroneous use of peremptory challenges. This case should be no different." [5]

■ "Those asking us to overturn prior precedent have a substantial burden of persuasion." *Menzies*, 889 P.2d at 398 (citing *State v. Hansen*, 734 P.2d 421, 427 (Utah 1986)). ProTech's cursory briefing of the overruling question is inadequate to satisfy this burden. Pro-Tech merely provides a short summary of our decision in *Menzies* and then ends with the conclusory statement, "This case should be no different." ProTech wholly fails to present any argument concerning the specific issue in this case: why prejudice should not be presumed when one side is erroneously given substantially more peremptory challenges than the other. Pro-Tech does not explain why presuming prejudice in this situation is unworkable, cre-

---

5. We note that Pro-Tech has stated the holding of *Hopt* too broadly. *Hopt* held that prejudice will not be presumed where a trial court fails to remove a juror for cause when the defendant who still has a peremptory challenge does not exercise that challenge to remove that juror. 9 P. at 408.

ates improper incentives for either trial courts or appellate courts, runs counter to public policy, or is significantly problematic for any other reason that justifies overruling *Randle.* We will not make Pro–Tech's arguments for it. Pro–Tech's request that we overrule *Randle* fails. *See Monson v. Carver,* 928 P.2d 1017, 1024 (Utah 1996).

We next address Pro–Tech's argument that our application of rule 47 violates constitutional guarantees of due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution, respectively, and the constitutional guarantee of uniform operation of the laws under article I, section 24 of the Utah Constitution. We first address the federal due process argument before considering the federal equal protection and state uniform operation of the law claims.

■■■ Regarding Pro–Tech's due process argument, we note at the outset that we begin with the presumption that a rule of civil procedure is constitutional, "and we resolve any reasonable doubts in favor of constitutionality." *See Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993) (citing *In re Criminal Investigation,* 754 P.2d 633, 640 (Utah 1988); *Snow v. Keddington,* 113 Utah 325, 195 P.2d 234, 240 (1948)). Therefore, the party challenging the constitutionality of a rule of civil procedure bears the burden of demonstrating that the rule is unconstitutional. *See id.*

■■■ Pro–Tech asserts two arguments in support of its contention that rule 47 violates its right to due process of law under the Fifth Amendment to the United States Constitution. First, Pro–Tech states that a plaintiff should not be permitted to name a defendant in a suit along with other defendants and thereby deprive that defendant of the same right to challenge jurors that the individual plaintiff may exercise; second, Pro–Tech contends that requiring defendants on the same side to jointly exercise peremptory challenges deprives a defendant of effective representation of an attorney. However, Pro–Tech does not cite to any federal due process case in support of its arguments. The only case relied upon by Pro–Tech is *Sutton,* but *Sutton* did not discuss any due

process issues relating to peremptory challenges.

The cursory nature of Pro–Tech's arguments and the lack of support provided warrant little response. First, as to Pro–Tech's contention that the plaintiff should not be able to control whether a defendant gets the same right to exercise peremptory challenges as the plaintiff, the plaintiff does not have this power. *Sutton,* which Pro–Tech relies upon in support of this argument, explained that parties are not on the same side if a "substantial controversy" exists between them. If such a controversy exists, the plaintiff cannot stop the defendants from exercising separate challenges. Indeed, *Sutton* stated that denying separate challenges in this situation is prejudicial error. 249 P. at 458.

Second, Pro–Tech argues that requiring joint exercise of peremptory challenges deprives a party of effective representation of counsel. While exercising additional peremptory challenges certainly may make counsel more effective, due process does not require making counsel more effective at the expense of the opposing side if there is not a "substantial controversy" between co-parties. Pro–Tech has not pointed to any case or presented any argument that explains why it is unreasonable to deny co-parties without a "substantial controversy" the right to more peremptory challenges than the opposing side. Though sharing peremptory challenges may be difficult for some co-parties, we do not find that this difficulty for some co-parties to cooperate is unreasonable given the alternative of permitting one side substantially more peremptory challenges. For these reasons, we reject both of Pro–Tech's due process arguments and conclude that rule 47 of the Utah Rules of Civil Procedure does not violate Pro–Tech's federal constitutional right to due process.

■■■ We now address Pro–Tech's federal equal protection and state uniform operation of the laws arguments. We begin with the observation that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the uniform operation of the laws requirement in article

I, section 24 of the Utah Constitution embody the same general principles. *See Malan v. Lewis,* 693 P.2d 661, 669 (Utah 1984). "Because no fundamental right or suspect class is involved in this case, the Fourteenth Amendment requires only that the classification be rationally related to a valid public purpose." *See Greenwood v. North Salt Lake,* 817 P.2d 816, 820–21 (Utah 1991). Under such a circumstance, the protection afforded by article I, section 24 is at least as rigorous as that provided by the United States Constitution. *See id.* at 821. Therefore, Pro–Tech's federal equal protection argument can add nothing to its separate state uniform operation of the laws argument. Consequently, we will address only whether rule 47 of the Utah Rules of Civil Procedure violates article I, section 24. *See Zissi v. State Tax Comm'n,* 842 P.2d 848, 855 (Utah 1992).

 Article I, section 24 states, "All laws of a general nature shall have uniform operation." When reviewing the constitutionality of a rule of procedure under this provision, we determine "whether the classification is reasonable, whether the objectives of the [rule] are legitimate, and whether there is a reasonable relationship between the classification and the [rule's] purposes." *Blue Cross & Blue Shield of Utah v. State,* 779 P.2d 634, 637 (Utah 1989); *see also Ryan v. Gold Cross Servs., Inc.,* 903 P.2d 423, 426 (Utah 1995). We begin by addressing the first question under the *Blue Cross & Blue Shield* analytical framework: whether the classification created by rule 47 of the Utah Rules of Civil Procedure is reasonable. Rule 47 treats co-parties differently than single parties in a lawsuit. A single party receives three peremptory challenges, but co-parties without a "substantial controversy" receive only three peremptory challenges to exercise jointly rather than three peremptory challenges each. We find nothing unreasonable about grouping co-parties. By grouping co-parties, rule 47 preserves the natural adversarial division in a lawsuit: plaintiffs versus defendants.

We now consider the second *Blue Cross & Blue Shield* question: whether the objectives of rule 47 are legitimate. Our prior cases interpreting this rule indicate that rule 47 is directed at maintaining the balance between the opposing sides in a lawsuit. As we stated in *Randle,* "A side that has additional peremptory challenges has the opportunity to shape the jury to its advantage." 862 P.2d at 1334. We find that maintaining the balance between the plaintiffs and the defendants is a legitimate objective.

 Having established both the reasonableness of the classification created by rule 47 and the legitimacy of its objectives, we proceed to consider the final *Blue Cross & Blue Shield* question: whether there is a reasonable relationship between creating a classification based on whether parties on the same side have a "substantial controversy" and wanting to maintain the balance between opposing sides in a lawsuit. We find that requiring co-parties to join in exercising the peremptory challenges allocated to a side is not an unreasonable way to maintain the equality of opposing sides. As we explained above, granting one side of the lawsuit additional peremptory challenges places the opposing side at a significant disadvantage. This problem is avoided by requiring co-parties to join in their peremptory challenges. Whenever a "substantial controversy" arises between co-parties, whether plaintiffs or defendants, the trial court must allocate additional peremptory challenges. In that instance, co-parties are considered to be on different sides. Thus, under rule 47 of the Utah Rules of Civil Procedure, all "sides" to a lawsuit retain an equal opportunity to shape the jury. On the basis of the foregoing, we find that there is a reasonable relationship between requiring co-parties to exercise their peremptory challenges jointly and wanting to maintain the balance between opposing sides in a lawsuit. We conclude, therefore, that rule 47 does not violate Pro–Tech's right to uniform operation of the laws or, consequently, Pro–Tech's right to equal protection.[6]

---

**6.** We note that our conclusion is consistent with our holding in *State v. Rivenburgh,* 11 Utah 2d 95, 355 P.2d 689 (1960), *cert. denied,* 368 U.S.

922, 82 S.Ct. 246, 7 L.Ed.2d 137 (1961). In that case, we upheld an analogous criminal peremptory challenge statute attacked under a similar

Finally, we address Pleasant Grove's contention that the court of appeals erred by stating that all of the defendants presented a united front against Carrier. We find this argument to be without merit. The court of appeals merely noted in dicta:

> Pleasant Grove might not have been entitled to its own set of peremptory challenges because no independent cause of action against it was asserted by either of its co-defendants nor was its defensive posture otherwise suggestive of a level of adverseness vis-a-vis the other defendants on par with non-derivative litigation.

*Carrier*, 909 P.2d at 275. The court of appeals' ultimate conclusion on the issue of Pleasant Grove's use of additional peremptory challenges was that Carrier had waived her objection. *Id.* We agree with the court of appeals that Carrier's counsel waived the objection on this matter when he stated, "I clearly will not dispute Pleasant Grove[ ] City has disparate interests, but I'm a little interested in how Smith and [Pro–Tech] have disparate interests." Because Pleasant Grove prevailed due to this waiver and because we find nothing inaccurate in the dicta to which Pleasant Grove objects, we find no reversible error in the court of appeals' statements.

The court of appeals did not specifically address what effect, if any, Carrier's waiver of her objection to the separate allocation of peremptory challenges to Pleasant Grove will have on the new trial. Ordinarily, a party prevailing due to the waiver of the opposing party would not be subjected to a new trial. However, we conclude that the equities of this case require Pleasant Grove to be subject to suit in the new trial. All three defendants received separate sets of peremptory challenges. While Carrier waived her objection to the allocation of a separate set of peremptory challenges to Pleasant Grove, the fact remains that the erroneous allocation of peremptory challenges to Smith and Pro–Tech undermined the neutrality and balance the peremptory challenge is designed to create. Moreover, the presence of all of the potentially liable defendants in the new trial will aid the fact finder in assessing fault. We instruct the trial court to ignore Carrier's waiver from the prior trial and to determine, on the basis of the principles set forth in this opinion, whether Pleasant Grove is entitled to a separate set of peremptory challenges.

In conclusion, we hold that the court of appeals correctly ruled that the trial court erred by granting separate sets of peremptory challenges to Smith and Pro–Tech. Furthermore, we hold that denying Smith and Pro–Tech separate sets of peremptory challenges does not violate Pro–Tech's federal constitutional right to due process and equal protection or state constitutional right to uniform operation of the laws. We also hold that the court of appeals correctly concluded that Carrier waived her objection to the granting of additional peremptory challenges to Pleasant Grove. Therefore, we uphold the decision of the court of appeals.

STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur in Chief Justice ZIMMERMAN's, opinion.

RUSSON, J., concurs in the result.

---

equal protection argument. *See id.* 355 P.2d at 696–97. The statute at issue in that case allowed criminal defendants ten peremptory challenges in capital cases. *Id.* at 696. When two or more defendants were jointly tried, the statute required that they had to join in exercising the ten collective challenges. *Id.* We concluded that the statute applied equally to all defendants alike when tried jointly and therefore did not violate the defendants' right to equal protection. *Id.* at 697.