2009 UT App 35

**Michael BEE, Plaintiff and Appellant,**

**v.**

**ANHEUSER–BUSCH, INC., a Missouri corporation, Defendant, Third-party Plaintiff, and Appellee,**

**v.**

**Prominence, Inc., a Nevada corporation, Third-party Defendant and Appellee.**

**No. 20070804–CA.**

Court of Appeals of Utah.

Feb. 12, 2009.

Matthew H. Raty and Cory B. Mattson, Sandy, for Appellant.

Peter H. Christensen and Ryan P. Atkinson, Salt Lake City, for Appellee Anheuser–Busch, Inc.

Donald L. Dalton, Salt Lake City, for Appellee Prominence, Inc.

Before GREENWOOD, P.J., THORNE, Associate P.J., and DAVIS, J.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiff Michael Bee appeals several decisions of the trial court in his personal injury action against Defendants Anheuser–Busch, Inc. and Prominence, Inc. (collectively, Defendants). He asserts that the trial court erred by granting Defendants separate sets of peremptory challenges, by failing to question potential jurors regarding tort reform, and by disallowing the admission of evidence regarding Anheuser–Busch's marketing and advertisements. We reverse and remand.

## BACKGROUND

¶ 2 During the 2002 Winter Olympics, Bee attended the Bud World Party and there participated in a hockey puck shooting contest. Bee, who was intoxicated by the time he entered the rink, slipped and fell on the ice and sustained brain, head, and neck injuries. Bee sued Anheuser–Busch for compensation for his injuries, as well as for punitive damages. Anheuser–Busch then filed a third-party complaint against Prominence, which was the event manager hired by Anheuser–Busch to run the Bud World Party during the Olympics. Bee then amended his complaint to include Prominence in his claims.

¶ 3 Prior to jury selection, Defendants requested separate sets of peremptory challenges, which the trial court granted over Bee's objection. The trial court reasoned that there was "a substantial matter of controversy" between Defendants because Anheuser–Busch was trying to show that Prominence acted negligently and because Anheuser–Busch's third-party complaint against Prominence raised breach of contract and indemnification issues. Bee again objected to the trial court's decision regarding the additional peremptory challenges when Defendants disclosed, after the jury selection process had commenced, that they had stipulated that Prominence would pay Anheuser–Busch for any judgment against Anheuser–Busch as well as for all attorney fees and costs incurred by Anheuser–Busch in this case. The trial court refused to alter its decision, reasoning that it still believed that Defendants "very well may be" in controversy with one another.

¶ 4 During jury selection, Bee submitted four questions regarding personal injury cases and tort reform that he desired the court to ask prospective jurors. The trial court initially determined not to ask all four questions, stating, "I may reduce them down. I don't know as I'm going to go into the detail. I think more of a general flavor of some of these questions would be fine." The trial court, however, never asked any questions regarding tort reform during voir dire. Bee asserts that he again raised the issue of the tort reform questions during a sidebar held off the record at the close of voir dire but that the trial court rejected his request to question the potential jurors on the issue.

¶ 5 After the jury was empaneled, trial commenced. During trial, Bee attempted to introduce evidence regarding the marketing and advertising practices of Anheuser–Busch to argue that these were a substantial contributing factor to Bee's injuries. But the trial court precluded the introduction of such evidence, reasoning that it was irrelevant to

"the accident and the negligence that [Bee] alleged."

¶ 6 At the end of the trial, the jury rendered its verdict. The jury determined that Defendants were both negligent and that their negligence contributed to Bee's injury. The jury apportioned fault as follows: 10% to Anheuser–Busch, 10% to Prominence, 5% to Bee's wife, and 75% to Bee. Bee now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 Bee contests the trial court's grant of separate sets of peremptory challenges to Defendants. A trial court may grant separate sets of peremptory challenges only when it determines that a "substantial controversy" exists between the co-defendants. Utah R. Civ. P. 47(e); *see also Carrier v. Pro–Tech Restoration*, 944 P.2d 346, 351 (Utah 1997). "This determination is a mixed question of fact and law," *Carrier*, 944 P.2d at 351, and the trial court is granted "limited discretion" in its determination, *id.* at 353. "On the spectrum of discretion, running from 'de novo' on the one hand to 'broad discretion' on the other, the appropriate discretion on this issue lies close to, although probably not at, the 'de novo' end." *Id.* (omission and internal quotations marks omitted).

■ ¶ 8 Bee also contests the trial court's failure to question the jury regarding personal injury cases and tort reform. "We review challenges to the trial court's management of jury voir dire under an abuse of discretion standard. Generally, the trial court is afforded broad discretion in conducting voir dire, 'but that discretion must be exercised in favor of allowing discovery of biases or prejudice in prospective jurors.'" *Barrett v. Peterson*, 868 P.2d 96, 98 (Utah

Ct.App.1993) (citations omitted) (quoting *State v. Hall*, 797 P.2d 470, 472 (Utah Ct. App.1990)).

■ ¶ 9 Finally, Bee argues that the trial court erroneously precluded him from presenting evidence of Anheuser–Busch's marketing and advertising practices. "The trial court is 'granted broad discretion in determining the relevance of proffered evidence,' and [the appellate court] review[s] the trial court's decision for abuse of that discretion." *Slisze v. Stanley–Bostitch*, 1999 UT 20, ¶ 17, 979 P.2d 317 (quoting *Hall v. Process Instruments & Control*, 890 P.2d 1024, 1028 (Utah 1995)).

## ANALYSIS

### I. Peremptory Challenges

■ ¶ 10 Bee argues that the trial court erred in granting separate sets of peremptory challenges to Defendants. The number of peremptory challenges allowed to litigating parties is governed by rule 47(e) of the Utah Rules of Civil Procedure, which states:

> Each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs shall be considered as a single party for the purposes of making peremptory challenges unless there is a substantial controversy between them, in which case the court shall allow as many additional peremptory challenges as is just.

Utah R. Civ. P. 47(e). Of course, there will often be some degree of adverseness between co-defendants, but this is not always sufficient to create a substantial controversy and to thus support allowing co-defendants separate sets of peremptory challenges.[1]

---

1. At oral argument, counsel for Prominence argued that we need not reach the issue of whether a substantial controversy existed between Defendants, because the rule provides that we only make such an inquiry when there are "several" defendants, which counsel argues means more than two defendants. "Statutory language is ambiguous if it can reasonably be understood to have more than one meaning." *Evans v. State*, 963 P.2d 177, 184 (Utah 1998). Although we acknowledge that the term "several" has more than one definition, *see Webster's Ninth New Collegiate Dictionary* 1078 (1986) (defining the term "several" as "separate or distinct from one another," "more than one," and "more than two

but fewer than many"—in that order), we do not agree that the term's usage in rule 47(e) can reasonably be understood to have the interpretation Prominence urges. Such an interpretation would result in a situation where two defendants whose interests are completely aligned are allowed a total of six peremptory strikes, yet three defendants would be limited to three peremptory strikes if there were no substantial controversy amongst them. Further, the definition cited to by counsel did not simply define the term "several" as more than two, but also as less than many. Thus, adopting the definition cited by counsel would also mean that we would not reach the

*See Randle v. Allen,* 862 P.2d 1329, 1333 (Utah 1993); *see also Carrier v. Pro–Tech Restoration,* 944 P.2d 346, 352 (Utah 1997) (stating that the following scenarios do not create a substantial controversy between defendants: "separate counsel, uncooperativeness, liability shifting, different defenses or claims resting on different facts or legal theories, and derivative cross-claims" (citing *Randle,* 862 P.2d at 1332–33)). "To avoid favoring one side of a lawsuit over another, a trial judge must carefully appraise the degree of adverseness among co-parties and determine whether that adverseness truly warrants giving that side more challenges than the other." *Randle,* 862 P.2d at 1333.

¶ 11 The trial court here determined that there was a substantial controversy between Defendants and allowed them each three peremptory challenges. Defendants argue that such a determination was appropriate because the third-party complaint filed by Anheuser–Busch against Prominence raised issues of indemnification, apportionment of fault, and breach of contract. Defendants contend that such claims were sufficient to create a substantial controversy between them. We disagree.

■ ¶ 12 The degree of adverseness between Defendants did not rise to the level of a substantial controversy.

> [A] 'substantial controversy' exists when a party on one side of a lawsuit has a cross-claim against a co-party that constitutes, in effect, a separate, distinct lawsuit from the action existing between the plaintiffs and defendants. When, however, a cross-claim is merely a derivative of the original action, such as a cross-claim for indemnification or contribution, a 'substantial controversy' does not exist for the purposes of Rule 47.

*Id.* Thus, the indemnification and apportionment of fault issues do not amount to a substantial controversy for purposes of granting extra peremptory challenges.

Moreover, these issues were resolved prior to trial when Defendants stipulated that "[Anheuser–Busch] will have an automatic judgment against Prominence, for any damages, judgment, expenses, costs, and reasonable attorney[ ] fees, either awarded by the jury against [Anheuser–Busch], or incurred by [Anheuser–Busch] in defense of [Bee's] claims." And Prominence's counsel effectively conceded that these issues were resolved when he commented that "[Defendants] do not have an issue for this jury to decide" and that "[Defendants] do not have claims in this case against each other."

¶ 13 This leaves only the breach of contract claim based on Prominence's duty to maintain general liability insurance and to defend Anheuser–Busch during litigation. We do not see that this claim, which was not adjudicated in the instant case, qualifies as a separate, distinct claim under these circumstances. Even assuming that the possibility of future litigation is sufficient to create a substantial controversy, we do not see how, as Anheuser–Busch argues, a judgment that Prominence's negligence caused Bee's injuries—as opposed to a judgment that Bee was himself at fault—would improve a future Anheuser–Busch claim alleging that Prominence had breached the contract by failing to maintain insurance or to defend Anheuser–Busch. Such a claim would, instead, involve the contract language and whether Prominence had fulfilled any obligation to procure insurance and defend Anheuser–Busch. The facts regarding Bee's judgment against the parties and the amount expended by Anheuser–Busch to defend itself against Bee's claim would arise only in the context of damages resulting from any breach of contract. And due to Defendants' stipulation in this case regarding indemnification for all costs to Anheuser–Busch, it appears that in a subsequent breach of contract action against Prominence, Anheuser–Busch would have no

substantial controversy question whenever there were a sufficient number of defendants to be considered "many." We recognize the importance of peremptory strikes, *see Carrier v. Pro–Tech Restoration,* 944 P.2d 346, 352 (Utah 1997) ("Peremptory challenges are a powerful tool for shaping the jury that hears the case and ultimate-

ly determines which side prevails. Therefore, the trial court should avoid lightly giving one side additional challenges."), and we do not think it reasonable to interpret rule 47(e) in a way that would grant peremptory strikes in such a patently unfair and illogical manner.

more than nominal damages to claim based on this incident.[2]

¶ 14 We therefore determine that even when giving the trial court the limited discretion it is allowed, the facts do not support the conclusion that there was a substantial controversy between Defendants for the purpose of awarding them separate sets of peremptory challenges. Instead, "Defendants presented a united front against [Bee]—they both asserted that [he] was more responsible for causing the accident than they." *See Carrier*, 944 P.2d at 353. And because " '[r]equiring a party to show prejudice in such circumstances is to require the impossible,' " we presume prejudice. *Id.* (quoting *Randle*, 862 P.2d at 1334). We therefore reverse and remand for a new trial or for such other proceedings as may now be appropriate.

¶ 15 Because we reverse and remand for a new trial, we need not reach the remaining issues on appeal. We choose, however, to briefly address the remaining two issues because they are likely to arise in a new trial. *See generally* Utah R.App. P. 30(a); *State v. Cloud*, 722 P.2d 750, 755 (Utah 1986) ("Because this case almost certainly will be retried, in the interest of judicial economy it is appropriate for us to comment on [the appellant]'s other contentions on appeal that will arise again upon retrial.").

## II. Tort Reform Voir Dire Questions

¶ 16 Respecting the four voir dire questions Bee requested regarding personal injury cases and tort reform, prior precedent is clear on this issue. We reiterate the discussion of the matter in *Barrett v. Peterson*, 868 P.2d 96 (Utah Ct.App.1993), and its application of *Evans v. Doty*, 824 P.2d 460 (Utah Ct.App.1991):

The *Evans* court explained that the decision about whether such voir dire questions should be asked "requires a balancing of the relative interests of the parties in light of the facts and circumstances of the particular case." Specifically, "in tort cases . . . we cannot ignore the reality that potential jurors may have developed tort-reform biases as a result of an overall exposure to such propaganda." "Reason suggests that exposure to tort-reform propaganda may foster a subconscious bias within certain prospective jurors." This is precisely the type of bias that counsel must be allowed to uncover if an impartial jury is to be impaneled. Accordingly, even when specific examples of tort-reform propaganda are not presented to the court, a "plaintiff has a legitimate interest in discovering which jurors may have read or heard information generally on . . . tort reform."

. . . .

In this case, none of the questions asked by the trial court even remotely addressed whether the prospective jurors had *heard* or *read* anything relating to tort-reform issues. Nor did the trial court attempt to address in a more general fashion the issues of . . . tort-reform propaganda in its voir dire questioning. The court asked only broad questions concerning the prospective jurors' self-assessed ability to be fair and impartial. As a result of this limited line of questioning, appellant was wholly unable to determine which, if any, prospective jurors had been exposed to tort reform propaganda, much less whether that exposure produced hidden or subconscious biases affecting their ability to render a fair and impartial verdict. Thus, under *Evans*, the trial court's line of questioning ignored appellant's need to garner information necessary both to detect actual bias and to intelligently exercise his peremptory challenges.

Accordingly, we conclude that the trial court should have asked the prospective jurors appropriate preliminary questions—either those suggested by appellant or alternative questions more to its liking—designed to detect, initially, whether any of the prospective jurors had been exposed to tort reform . . . propaganda. Had the trial court done so, and had any of the jurors responded positively to these initial ques-

---

**2.** We recognize that there may be situations where a substantial controversy exists apart from either an independent lawsuit or a nonderivative cross-claim. *See Carrier v. Pro–Tech Restoration*, 909 P.2d 271, 275 n. 4 (Utah Ct.App.1995), *aff'd*, 944 P.2d 346, 353 (Utah 1997).

tions, appellant would have been entitled to have more specific questions put to the jurors designed to probe those jurors' attitudes regarding, and possible bias resulting from, the tort-reform information.

*Barrett,* 868 P.2d at 100–02 (citations omitted) (quoting *Evans,* 824 P.2d at 467).

### III. Relevance of Marketing and Advertisement Evidence

¶ 17 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. Bee argues that evidence of Anheuser–Busch's marketing and advertising practices was relevant because those practices contributed to his intoxicated state and his "ill-advised participation" in the hockey contest. We, disagree. Bee proffered the facts that Anheuser–Busch (1) has a long history of selling alcohol; (2) has been very successful through its advertising campaigns; (3) knows of the danger of alcohol-related injuries; and (4) has failed to include statistics or footage of such injuries in its advertisements but, instead, has "convey[ed] the message there is no downside to drinking and people can act irresponsibly without consequence." We do not see how these facts, even if true, make it more likely that Defendants are negligent as such negligence was alleged in this case, i.e., that Defendants allowed Bee to participate in a contest on the ice while he was clearly intoxicated and without providing him any protective equipment. Further, Bee did not allege in his complaint that these advertising-related actions were themselves negligent or that they were a proximate cause of his injuries. Thus, the marketing and advertising evidence is not relevant and was properly excluded by the trial court.

### CONCLUSION

¶ 18 We conclude that it was error for the trial court to allow Defendants separate sets of peremptory challenges. In such a situation, prejudice is presumed. Therefore, we reverse the judgment and remand to the district court for a new trial or for such other proceedings as may now be appropriate.

¶ 19 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and WILLIAM A. THORNE JR., Associate Presiding Judge.