**STATE of Utah, Appellee and Respondent,**

v.

**Francisco ALONZO and Miguel Alonzo-Nolasco, Appellants and Petitioners.**

No. 970104

Supreme Court of Utah.

Dec. 29, 1998.

Jan Graham, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., Salt Lake City, Cy H. Castle, Salt Lake City, for appellee.

Linda M. Jones, Steven G. Shapiro, Ralph Dellapiana, Salt Lake City, for appellants.

**DURHAM, Associate Chief Justice:**

Petitioners Francisco Alonzo and Miguel Alonzo–Nolasco seek review of a Utah Court of Appeals' decision upholding the convictions of both petitioners for assaulting a police officer and upholding Alonzo–Nolasco's conviction for interfering with an arrest. We affirm.

The factual accounts offered at trial by the police officers and the petitioners diverge significantly. The police officers report conducting themselves in a manner consistent with gaining control of a situation, while the petitioners complain of excessive force and brutality. Essentially, the facts can be described as follows:

On the evening of July 23, 1995, Alonzo and Alonzo–Nolasco found themselves locked out of Alonzo–Nolasco's apartment. While waiting for Alonzo–Nolasco's roommate to return with a key, both petitioners fell asleep. Responding to a telephone call that two individuals had "passed out" in the hallway of an apartment complex, Salt Lake City Police officers came to the scene. Upon arrival, Officer John Lundgren, accompanied by a civilian, and Officer Shauna Bills, accompanied by a police volunteer, confirmed that two individuals were sleeping in the hallway.

According to the officers, the hallway smelled of alcohol and at least two empty wine cooler bottles were observed near the petitioners. Officer Lundgren and Officer Bills announced to the sleeping individuals that they were with the Salt Lake City police and tried to awaken them verbally. When the sleeping petitioners did not wake up, the officers resorted to several methods of awakening them. According to his account, Officer Lundgren first tried to awaken Alonzo by applying some type of pressure behind Alonzo's ear. When that did not work, Officer Lundgren next began to "vigorously" rub Alonzo's chest with his flashlight. Alonzo awoke alarmed and immediately began to struggle with Officer Lundgren.

In the meantime, Officer Bills quickly awakened Alonzo–Nolasco by shaking his leg but then immediately handcuffed him, forcing him onto his stomach. While Alonzo–Nolasco was being handcuffed, Alonzo's struggle with Officer Lundgren intensified. Officer Lundgren testified that Alonzo awoke grabbing at his shirt, kicking, and biting. Officer Lundgren tried to handcuff Alonzo but could not do so due to the struggle. At some point, Officer Lundgren began to strike Alonzo in the mid-section with his fists and then tried to force Alonzo onto his stomach.

Officer Bills noticed the struggle and left the cuffed and prostrate Alonzo–Nolasco to go to the aid of Officer Lundgren. While Officer Bills sat on Alonzo's legs, Officer Lundgren continued to punch Alonzo repeatedly in the rib cage. Alonzo continued to fight and kick. At this point, the officers report that Alonzo–Nolasco had, while cuffed and on his stomach, slid over and joined the fray by kicking them. At this crucial juncture, one of the civilian witnesses yelled to the officers that Alonzo was attempting to grab Officer Bills' gun. In response to this report, Officer Lundgren pulled out his pepper spray and, while calling for backup, sprayed Alonzo in the face.

Responding to Officer Lundgren's call, off-duty Officer Jeffrey Webb quickly arrived. Officer Webb first tried unsuccessfully to grab Alonzo's hands then resorted to punching Alonzo repeatedly in the mid-section, spraining his wrist in the process. Soon thereafter, Alonzo placed his hands behind his back allowing the officers to handcuff him. Alonzo was then taken, without incident, to the waiting police van and placed therein.

When Alonzo–Nolasco was taken outside to be loaded into the police van, the police had a difficult time. Alonzo–Nolasco struggled when police tried to place him in the van and he was eventually placed upon the ground, bleeding profusely from his nose and mouth. One officer testified at trial that he assumed that Alonzo–Nolasco's injury occurred while he was struggling with the police as they tried to load him into the van. One civilian witness testified that she saw Alonzo kick Alonzo–Nolasco in the face while officers were trying to lift him into the van.

The foregoing account largely reflects the prosecution's evidence at trial. Alonzo and Alonzo–Nolasco testified to a much different scenario. Alonzo–Nolasco, who was awakened first, testified that he was "startled and scared" when Officer Bills woke him up. He said that one of the officers punched him in the nose and that he was maced, handcuffed, pummeled, and knocked unconscious. Alonzo–Nolasco testified that he had no idea why the police were attacking him. In fact, when Alonzo–Nolasco arrived at the jail, the jail refused to accept him due to his physical injuries, and he was taken instead to the hospital.

Alonzo testified that he awoke startled, presumably by the "vigorous" rubbing of his sternum with the police flashlight and found his brother kneeling on the floor close by, bleeding. He reported that he had originally sought to come to the aid of his brother but that he was pulled back by his hair and repeatedly punched and kicked. Alonzo further testified that he rolled onto his stomach to protect himself from the blows of the police officers and that at no time did he reach for or attempt to take the gun of Officer Bills. Further, Alonzo reported that he did not inflict any kind of injury upon his brother.

Both men, according to the record, were bloodied and bruised when they finally arrived at the jail. The record also is clear that at no time during the encounter did the police officers announce to the brothers that they were under arrest.

On November 1, 1995, a jury found both men guilty of assault on a police officer and found Alonzo–Nolasco guilty of interfering with a legal arrest. The jury did not find either petitioner guilty of public intoxication, the charge the police were investigating when they came upon the sleeping brothers.

■ Petitioners appealed the jury verdict and the court of appeals affirmed their convictions. *State v. Alonzo*, 932 P.2d 606 (Utah Ct.App.1997). We granted certiorari to review the court of appeals' decision. *State v. Alonzo*, 940 P.2d 1224 (Utah 1997). On certiorari we review the court of appeals' decision, not that of the trial court, and use the same standard of review applied by the court of appeals. *Hebertson v. Willowcreek Plaza*, 923 P.2d 1389, 1392 (Utah 1996). We review each of the court of appeals' holdings as follows:

## I. RECUSAL OF TRIAL JUDGE

Petitioners argue that the trial judge erred by failing to recuse himself after making biased statements regarding petitioners' guilt. The court of appeals conceded that at the very least, the trial judge created an

appearance of bias but held that no actual prejudice was shown by petitioners and refused to reverse on bias grounds. *Alonzo*, 932 P.2d at 611–12. We agree.

■ Determining whether a trial judge committed error by failing to recuse himself or herself under the Utah Code of Judicial Conduct, rule 29 of the Utah Rules of Criminal Procedure and our accompanying case law is a question of law, and we review such questions for correctness. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

We made clear in *State v. Neeley* that, under the Utah Code of Judicial Conduct, a "judge should recuse himself when his 'impartiality' might reasonably be questioned." *State v. Neeley*, 748 P.2d 1091, 1094 (Utah), *cert. denied*, 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988). Petitioners assert that prior to trial, in chambers, with both parties present, the trial judge stated that petitioners' case could be resolved quickly if they would waive their right to a jury trial and "just plead guilty." Petitioners further claim that the trial judge suggested that he knew, based on his experience as a prosecutor, that petitioners were guilty. Whether these comments were made in jest, as argued by the State, is immaterial. Such comments call into serious question the impartiality of any judge regardless of humorous intent.

We have held, however, that a judge's failure to recuse himself or herself does not automatically entitle a defendant to a new trial, particularly if the offending judge complied with rule 29 of the Utah Rules of Criminal Procedure. *See Neeley*, 748 P.2d at 1094–95. Rule 29 provides in relevant part:

(c) If the prosecution or a defendant in any criminal action or proceeding files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a bias or prejudice, either against the party or his attorney or in favor of any opposing party to the suit, the judge shall proceed no further until the challenge is disposed of....

(d) If the challenged judge questions the sufficiency of the allegation of disqualification, he shall enter an order directing that a copy be forthwith certified to another named judge of the same court, ... which judge shall then pass upon the legal sufficiency of the allegations.... If the judge to whom the affidavit is certified does not find the affidavit to be legally sufficient, he shall enter a finding to that effect and the challenged judge shall proceed with the case or proceeding.

Utah R.Crim. P. 29(c) & (d).

■ The trial judge in this case complied exactly with rule 29. After he had been approved to continue, the burden shifted to the petitioners to show actual bias or abuse of discretion. *Neeley*, 748 P.2d at 1094–95.

■ Petitioners assert that the judge's comments in chambers constituted actual bias and that his failure to recuse himself requires reversal. We agree with the court of appeals that actual bias or abuse of discretion has not been demonstrated here. The parties differ widely in their account and general explanation of the trial judge's in-chambers comments. Absent a record of the actual language used by the judge and absent any other evidence of actual bias in the record, we agree with the court of appeals and conclude that the affidavits of one side are not enough to prove actual bias. *See Alonzo*, 932 P.2d at 611.

■ In *State v. Gardner*, we held that a trial judge's failure to recuse based on the appearance of bias may be grounds for reversal if actual prejudice is shown. *See State v. Gardner*, 789 P.2d 273, 278 (Utah 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). Actual prejudice can be shown when there exists a reasonable likelihood that the result would have been more favorable for the defendants absent the trial judge's appearance of bias. *See id.* Again, the comments alleged here created an appearance of bias; however, standing alone, we conclude that they were insufficient to support a finding that actual prejudice was suffered by petitioners. We therefore affirm the court of appeals in finding that "had the judge recused himself, there was nevertheless no reasonable likelihood of a more favorable result for defendants. Defendants' guilt ... was determined by a jury ... and the judge's statements were made before trial in

chambers and were, therefore, not made in the jury's presence." *Alonzo,* 932 P.2d at 611–12.

## II.  COMMENTS REGARDING EVIDENCE

■ Petitioners also claim that the trial judge, on three different occasions, improperly commented on the evidence in a way that bolstered the prosecution.  We have made it quite clear in the past that a court may not comment on the weight of the evidence presented at trial or comment on the merits of the case in such a way that indicates a preference toward either party.  *See State v. Larson,* 775 P.2d 415, 419–20 (Utah 1989).

■ Petitioners cite to the following three comments made by the judge while the prosecution was presenting a hypothetical about use of excessive force.  First, in overruling a defense objection arguing that the State's expert was not qualified to give an opinion with respect to the excessiveness of the force used by the officers, the trial judge stated that the expert's testimony was "the first real down-to-earth evidence that we've had so far in this case as to this very issue."  Second, after the defense objected to the prosecution's hypothetical as leading and confusing, the judge responded by saying to the prosecutor: "When you first asked [the hypothetical question], I thought you did an excellent job, you did the proper thing."  The final example of allegedly improper commentary came when defense counsel objected to the hypothetical as a mischaracterization of the facts in evidence.  The judge responded: "Well, I don't think it's a mischaracterization of the facts in evidence."

We agree with the court of appeals that these comments, in context, do not rise to the level of reversible error.  The trial judge's comments were merely explanatory in nature.  Furthermore, the trial judge sought to cure any perception of favoritism by instructing the jury that "[t]he facts will be determined by the jury, as I've instructed you in the past.  You're the judges of the facts, not me, so you must disregard that if I did, in fact, say the hypothetical facts of the case."

## III.  EXCLUSION OF CHARACTER EVIDENCE

Petitioners claim that the trial judge improperly excluded evidence of prior incidents involving Officer Lundgren, while simultaneously disallowing introduction of evidence of Alonzo's peaceful nature and good character.  The trial judge excluded evidence of any incident involving Officer Lundgren's misuse of pepper spray in violation of department policy as more prejudicial than probative under rule 403 of the Utah Rules of Evidence.  The trial judge also refused to admit evidence of Alonzo's good character, determining that it was irrelevant.  The court of appeals upheld both of the trial court's decisions; although it found that the trial judge erred in excluding the good character evidence, it concluded that the error was harmless.  *Alonzo,* 932 P.2d at 613–14. We agree.

■ When reviewing rule 403 determinations, "we will not reverse the trial court's determination absent an abuse of discretion."  *State v. Troyer,* 910 P.2d 1182, 1191 (Utah 1995).  We afford trial judges broad discretion in admitting or excluding evidence that requires appraisal of its probative and prejudicial value.  We are inclined to affirm if, absent specific rule 403 findings, we can find some basis in the record for deciding that the trial court's actions were not an abuse of discretion.  *See State v. Auble,* 754 P.2d 935, 937 (Utah 1988).  We agree with the court of appeals' holding that the trial court did not abuse its discretion. *See Alonzo,* 932 P.2d at 614.  The circumstances of the prior incident involving Officer Lundgren were different from the present case and Officer Lundgren was in fact cleared of wrong doing after an investigation.  Thus, the court of appeals correctly determined that the trial court was within the bounds of reasonableness in concluding that the prejudicial effect of the evidence outweighed its probative value.  *See id.*

A trial court has far less discretion when dealing with evidentiary questions regarding a defendant's proffer of evidence of peacefulness and good character under rule 404. The court of appeals recognized that the trial judge erred in refusing Alonzo the opportuni-

ty to introduce "good character" evidence but held that the error was harmless. *See id.* We agree.

■ The trial judge refused to admit Alonzo's response to the following question: "Are you the type of person who would start a fight with the police?" Rule 404(a) of the Utah Rules of Evidence explicitly permits an accused to offer evidence of a pertinent character trait for purposes of proving that he or she acted in conformity with that trait on the occasion in question. *See* Utah R. Evid. 404(a). We have held in the past that "[e]vidence of good character may be considered by the jury for whatever value or persuasiveness they think it should have as bearing generally upon the propensity of the defendant to commit crime and the likelihood of his having committed the particular crime charged." *State v. Ervin,* 22 Utah 2d 216, 219, 451 P.2d 372, 373 (1969). The trial judge inexplicably denied Alonzo the opportunity to present his evidence. The denial was particularly inappropriate in light of our further analysis in *Ervin* where we held that character evidence is "admissible, regardless of the decisive or indecisive character of the other testimony; and it is within the province of the jury to give it such weight, in view of all the other evidence, as it may be entitled to receive." *Id.* at 374.

■ While holding that the trial judge erred in refusing to admit this testimony, against the clear weight of our case law and statutes, the court of appeals also held that the petitioners failed to show any harm or that the result would have likely been different absent the error. *See Alonzo,* 932 P.2d at 614. As pointed out by the court of appeals, petitioners have failed to establish that there is a reasonable likelihood of a more favorable result for the petitioners had the trial court permitted Alonzo to answer the question regarding his peaceful character. The record makes it quite clear that this case turned on the credibility of the witnesses. The jury had a straightforward choice to credit either the prosecution's or the defendant's version of this encounter; it is not reasonable to believe that allowing Alonzo to answer one question regarding his own peaceful nature would have influenced that choice.

## V. CLOSING ARGUMENTS AND JURY INSTRUCTIONS

■ The petitioners argue that the trial judge erred by preventing defense counsel from drawing parallels between this case and the Rodney King incident involving police violence in Los Angeles. *See id.* at 614–15. We have held in the past that attorneys have broad latitude in presenting closing arguments but that such latitude does not extend to counsel calling the jury's attention to material that the jury would not be justified in considering in its verdict. *See State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989). The court of appeals correctly held that the trial court properly restricted certain references to Rodney King as material the jury should not consider. *Alonzo,* 932 P.2d at 615.

■ Lastly, petitioners argue that the trial judge erred in refusing to give a proposed jury instruction based on self-defense. A trial court does not err, however, by refusing "a proposed instruction if the point is properly covered in the other instructions." *State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992). The question of police brutality was appropriately addressed in jury instruction number 17 which stated: "If you find in this case that the officers used excessive force in making arrests, then they are acting beyond the scope of their authority and the defendants are justified to use reasonable force in protecting themselves or others." The jury was therefore properly instructed.

The decision of the court of appeals is affirmed.

Chief Justice HOWE, Justice ZIMMERMAN, and Justice RUSSON concur in Associate Chief Justice DURHAM's opinion.

Justice STEWART does not participate herein.