2009 UT App 241

**John BOYLE and Norrine Boyle,
Plaintiffs and Appellants,**

v.

**Kerry CHRISTENSEN, Defendant
and Appellee.**

No. 20080582–CA.

Court of Appeals of Utah.

Sept. 3, 2009.

Roger P. Christensen and Scot A. Boyd, Salt Lake City, for Appellants.

Kristin A. Vanorman and Jeremy G. Knight, Salt Lake City, for Appellee.

Before Judges THORNE, DAVIS, and McHUGH.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 John and Norrine Boyle, husband and wife, appeal from the district court's judgment awarding Mr. Boyle damages of $62,500 against Kerry Christensen. We affirm the judgment of the district court.

## BACKGROUND

¶ 2 In 2004, Christensen struck Mr. Boyle with his vehicle while Mr. Boyle was walking in a crosswalk located in a grocery store parking lot. As a result, Mr. Boyle suffered back injuries that ultimately required back surgery. The surgery was only partially successful and left Mr. Boyle with chronic back pain. In 2005, the Boyles sued Christensen for negligence and loss of consortium.

¶ 3 In January 2008, Christensen filed a motion to dismiss Mrs. Boyle's loss of consortium claim. Christensen's motion argued that loss of consortium as a cause of action is governed by statute and requires an "injury" as that term is statutorily defined. *See* Utah Code Ann. § 30–2–11 (Supp.2008). The district court agreed with Christensen that Mr. Boyle's claimed injuries did not meet the statutory definition of an injury and dismissed Mrs. Boyle's loss of consortium claim.

¶ 4 Trial on Mr. Boyle's negligence claim took place in June 2008. As trial approached, Mr. Boyle submitted a proposed jury questionnaire that included specific questions intended to elicit jurors' views regarding damages and tort reform. Christensen also submitted proposed voir dire questions, and the district court edited and combined the parties' proposed questions into a single set of voir dire questions that did not contain the exact questions posed by either party. The district court conducted voir dire using its own questions without objection from either party. At the close of voir dire, both Mr. Boyle and Christensen passed the jury for cause.

¶ 5 Christensen had admitted liability for Mr. Boyle's injuries, and trial commenced solely on the issue of damages. After each side rested its case, the parties made their closing arguments to the jury. During Christensen's closing argument, his counsel characterized Mr. Boyle's closing argument relating to pain and suffering damages as follows:

> It's a per diem analysis. How many days has it been since the accident? How many days for the rest of his life? And how much per day is that worth? That's what's been done here. That's how we get verdicts like in the McDonald's case with a cup of coffee.

Mr. Boyle's counsel timely objected to the reference to "the McDonald's case"—a New Mexico lawsuit docketed as *Liebeck v. McDonald's Restaurants,* case no. D–202–CV–9302419, that resulted in a famously large 1994 jury verdict—stating that "it's prejudicial and it's not in evidence." The district court overruled this objection, and Christensen's counsel completed her closing argument without further reference to *Liebeck.*

¶ 6 The jury ultimately rendered Mr. Boyle a damages verdict of $62,500, of which $27,800 was for general pain and suffering. The jury's general damages award was significantly less than that sought by Mr. Boyle, and he appeals from the resulting judgment. Mrs. Boyle also appeals from the dismissal of her loss of consortium claim.

## ISSUES AND STANDARDS OF REVIEW

 ¶ 7 Mr. Boyle first argues that the district court erred in failing to question potential jurors on the issues of juror bias and tort reform. "We review challenges to the trial court's management of jury voir dire under an abuse of discretion standard." *Bee v. Anheuser–Busch, Inc.,* 2009 UT App 35, ¶ 8, 204 P.3d 204 (internal quotation marks omitted). However, alleged deficiencies in voir dire must be brought to the district court's attention in order to be preserved for appeal. *See Doe v. Hafen,* 772 P.2d 456, 458 (Utah Ct.App.1989).

 ¶ 8 Next, Mr. Boyle argues that the district court erred by allowing Christensen to reference *Liebeck* in his closing argument. "The determination of whether remarks made during closing argument improperly influenced the verdict is within the sound discretion of the trial court." *Green v. Louder,* 2001 UT 62, ¶ 35, 29 P.3d 638.

 ¶ 9 Finally, Mrs. Boyle argues that the district court erred when it granted Christensen's motion to dismiss her loss of consortium claim. "We review a trial court's ruling on a motion to dismiss for correctness, according no deference to the trial court." *Code v. Utah Dep't of Health,* 2007 UT App 390, ¶ 3, 174 P.3d 1134; *see also Buckner v. Kennard,* 2004 UT 78, ¶ 9, 99 P.3d 842.

## ANALYSIS

### I. Voir Dire on Juror Bias and Tort Reform

¶ 10 Mr. Boyle's first argument on appeal is that the district court erred in failing to conduct voir dire questioning on issues relat-

ing to juror bias and tort reform. In his jury questionnaire, Mr. Boyle proposed the following voir dire questions: [1]

> 4[.] What are your feelings or opinions about people who bring personal injury lawsuits? If supported by the evidence, could you award a large amount of money to the plaintiff in this case?

> 5[.] If you were seriously hurt or injured by the negligence of another, would you sue? Please explain your answer:

> 6[.] If supported by the evidence, could you award money damages for
> a. Future physical pain
> b. Mental anguish
> c. The impact on a wife of partially disabling injuries to her husband?
> d. Future medical bills
> If you answered NO to any of the above, please explain:

> 7[.] Do you believe the law should impose limits on money that can be awarded for pain and suffering[?] If YES, what do you believe these limitations should be?

The district court did not ask the potential jurors these questions but, rather, conducted voir dire using a set of questions that it had drafted itself.

¶ 11 The district court's voir dire asked potential jurors the following questions relating to juror attitudes about personal injury claims and damages:

> 13. Do you have any feelings or beliefs that would prevent you from being fair and impartial regarding persons who have personal injury disputes and who choose to resolve those disputes by going to court?

> 14. Do you have any personal, religious or other beliefs that would prevent you from awarding damages in a large amount, small amount, or zero amount, if warranted and justified by the evidence and the law given you by the Court?

> 15. Given all considerations and everything you know about this case so far, can you be a fair, impartial, neutral, judge of

---

1. Mr. Boyle's questionnaire included various "yes" or "no" check boxes that have been omit- ted here for ease of quotation.

the facts and follow the law as given to you by the Court?

At no time, however, did Mr. Boyle ever indicate to the district court that the court's questions failed to adequately address the concerns posed by his own questions, and Mr. Boyle ultimately passed the jury for cause.

¶ 12 Mr. Boyle argues on appeal that his mere submission of specific jury questions relating to damages and tort reform preserves for appeal his claim that the voir dire questions the district court actually posed were inadequate. We disagree. "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (internal quotation marks omitted). Here, the district court attempted to reconcile the parties' proposed jury questions into a single set of voir dire questions that addressed each party's concerns. If Mr. Boyle believed that the district court's modification of his questions constituted error on the part of the district court, it was his obligation to bring this alleged error to the district court's attention. His failure to do so constitutes a waiver of the issue as one for appeal. *See id.; compare Doe v. Hafen*, 772 P.2d 456, 458 (Utah Ct. App.1989) (finding no preservation where a party failed to "call the judge's attention to [a] specific question" in a set of voir dire questions that had been rejected by the trial court), *with Alcazar v. University of Utah Hosps. & Clinics*, 2008 UT App 222, ¶ 5, 188 P.3d 490 (addressing substantive issue where appellant had "repeatedly attempted to persuade the trial court to give the requested voir dire questions, including briefing the rather direct authority from this court on the issue, [but] the court declined and offered its own unique philosophical approach to voir dire in medical malpractice cases").

¶ 13 Mr. Boyle argues for the first time in his reply brief that the district court's failure to question the jury on the requested issues constitutes plain error and is thus an exception to the preservation requirements. *See generally Nielsen v. Spencer*, 2008 UT App 375, ¶ 14, 196 P.3d 616 (discussing plain error), *cert. denied*, 207 P.3d 432 (Utah 2009). In the past, we have refused to consider arguments of plain error raised for the first time in an appellant's reply brief, even if the plain error argument is in response to a dispute over preservation raised for the first time in the appellee's brief. *See, e.g., Moore v. Smith*, 2007 UT App 101, ¶ 24, 158 P.3d 562, *cert. denied*, 182 P.3d 910 (Utah 2007). Accordingly, we do not conduct a plain error analysis here.

¶ 14 We conclude that Mr. Boyle failed to adequately preserve for appeal his claim that the district court's voir dire questioning was inadequate. Although the district court did not ask the exact questions submitted by Mr. Boyle, it did ask related questions. Thereafter, Mr. Boyle passed the jury for cause without objection and without explaining the alleged harm resulting from the fact that his proposed questions had not been asked. Under these circumstances, Mr. Boyle failed to preserve any claim of error arising from the district court's failure to ask his submitted questions. Accordingly, we decline to address that issue.

## II. Closing Arguments

¶ 15 Mr. Boyle next argues that he is entitled to a new trial because of Christensen's counsel's reference to *Liebeck*—the McDonald's coffee case—in her closing argument. Closing arguments represent the final opportunity for parties to summarize their cases and attempt to influence the jury, and parties are allowed substantial leeway in doing so. *See State v. Alonzo*, 932 P.2d 606, 615 (Utah Ct.App.1997), *aff'd*, 973 P.2d 975 (Utah 1998).

Counsel for both sides have considerable latitude in their closing arguments. They have the right to fully discuss from their perspectives the evidence and all inferences and deductions it supports. However, counsel exceeds the bounds of this discretion and commits error if he or she calls to the jury's attention material that the jury would not be justified in considering in reaching its verdict.

*Id.* (citation and internal quotation marks omitted). Mr. Boyle attempts to characterize Christensen's counsel's comment as one that "calls to the jury's attention material that the jury would not be justified in considering in reaching its verdict," *see id.*, but we reject that characterization.

¶ 16 Mr. Boyle argues that there had been no evidence presented about the *Liebeck* case and that the reference was therefore improper as "unrelated commentary ... that is not supported by the evidence." Mr. Boyle cites *State v. Alonzo*, 932 P.2d 606 (Utah Ct.App. 1997), *aff'd*, 973 P.2d 975 (Utah 1998), in support of his argument. In *Alonzo*, the defendants were charged with assaulting a police officer following a physical altercation between the defendants and police. *See id.* at 608–09. During closing arguments, the defendants referred to " 'those Rodney King cops that are doing time in the Federal pen' " in an attempt to illustrate that police officers who use excessive force could lose their jobs and go to jail. *See id.* at 614–15. The district court disallowed this use of the Rodney King matter but did clarify "that the jury could consider defense counsel's arguments involving the Rodney King officers for the purpose of weighing 'the credibility of the witnesses, if they want to examine it in that way.' " *Id.* at 615. This court affirmed the district court's treatment of the Rodney King issues. *See id.*

¶ 17 Mr. Boyle has failed to demonstrate that *Alonzo* renders Christensen's counsel's reference to *Liebeck* erroneous. In both this case and *Alonzo*, counsel used references to iconic legal matters to make legitimate points to the jury. Mr. Boyle argues that *Liebeck* is synonymous with excessive verdicts and runaway juries, and that may be true. But we see no harm in allowing Christensen to use a cultural reference as shorthand to make the point that, in Christensen's opinion, Mr. Boyle's damages methodology was likely to render this jury's verdict excessive. Such an argument is not inappropriate, and Chris-

tensen's counsel's use of *Liebeck* to illustrate the point is surely no more objectionable than counsel's usage of what is arguably the nation's most famous police brutality case in *Alonzo*,[2] *see id.* at 614–15.

¶ 18 In sum, we see no error created by Christensen's counsel's comment to the jury. Accordingly, we decline to disturb the judgment below on this ground.

### III. Mrs. Boyle's Loss of Consortium Claim

¶ 19 Finally, Mrs. Boyle argues that the district court erred when it dismissed her loss of consortium claim. We agree with the district court that Mrs. Boyle failed to present evidence that would support a loss of consortium claim under the parties' mutual interpretation of the governing statute.

¶ 20 Loss of consortium claims are governed by Utah Code section 30–2–11. *See* Utah Code Ann. § 30–2–11 (Supp.2008). "The spouse of a person injured by a third party ... may maintain an action against the third party to recover for loss of consortium." *Id.* § 30–2–11(2). However, not every injury to a spouse will support a loss of consortium claim. Section 30–2–11 defines the required degree of injury:

"[I]njury" or "injured" means a significant permanent injury to a person that substantially changes that person's lifestyle and includes the following:

(i) a partial or complete paralysis of one or more of the extremities;

(ii) significant disfigurement; or

(iii) incapability of the person of performing the types of jobs the person performed before the injury.

*Id.* § 30–2–11(1)(a).

¶ 21 Here, both parties argued to the district court and on appeal that no loss of consortium claim will lie *unless* the injured spouse suffers paralysis of an extremity, significant disfigurement, or job incapacity. Ac-

---

2. We note that Mr. Boyle's counsel also made reference to *Liebeck* in his closing argument, albeit in reply to Christensen's counsel's comment:

The McDonald's case was mentioned. What was not mentioned is the court has a right to,

and did, fix that. The bad verdict got all the press. The fact that the court reduced it to less than I think ten percent of the original amount of course didn't make the press.

cepting this interpretation of the statute for purposes of this appeal,[3] we agree with the district court that Mr. Boyle's injuries do not fall within the statutory definition of an injury.

¶ 22 On appeal, Mrs. Boyle argues that Mr. Boyle's injuries meet the job incapacity prong of the statutory definition because he "is impaired in his ability to perform the job to the same degree and extent that he could prior to the incident."[4] However, that prong of the statute does not speak in terms of impairment but, rather, "incapacity." *See* Utah Code Ann. § 30-2-11(1)(a)(iii). Mr. Boyle's deposition established that he worked in sales and at a golf course both before and after his injury. Although these jobs apparently caused Mr. Boyle significant discomfort after the injury, he was capable of performing them. In light of these facts, Mrs. Boyle has not presented evidence that Mr. Boyle is "incapab[le] ... of performing the types of jobs [he] performed before the injury." *See id.*

¶ 23 Under these circumstances, we cannot say that the district court erred in dismissing Mrs. Boyle's loss of consortium claim. Mrs. Boyle agreed with Christensen that the relevant statute required one of three specific types of injuries in order for her claim to be actionable, and she failed to present evidence that Mr. Boyle's injuries fell into one of the required categories. Accordingly, the district court correctly dismissed Mrs. Boyle's loss of consortium claim.

## CONCLUSION

¶ 24 We conclude that Mr. Boyle did not adequately preserve his argument that the district court erred in failing to ask requested juror bias and tort reform questions on voir dire. We also conclude that no error arose from Christensen's counsel's closing argument reference to *Liebeck* and that the district court properly dismissed Mrs. Boyle's loss of consortium claim. According-

ly, we affirm the judgment of the district court.

¶ 25 I CONCUR: JAMES Z. DAVIS, Judge.

McHUGH, Judge (concurring in result):

¶ 26 While I agree with my colleagues that the decision of the trial court should be affirmed, I write separately to indicate my differing view on the challenge to Christensen's closing argument. Although I agree that the narrow use of the *Liebeck v. McDonald's*, No. CV-93-02419, 1995 WL 360309, at *1 (N.M. Dist. Aug.18, 1994), decision was not prejudicial, I would hold that it was improper. Furthermore, I do not read *State v. Alonzo*, 932 P.2d 606 (Utah Ct.App. 1997), *aff'd*, 973 P.2d 975 (Utah 1998), as approving the introduction of such extraneous matter during closing argument.

¶ 27 The *Alonzo* defendants claimed that police officers had used excessive force against them and, in closing argument, cited the prison sentences imposed on the police officers involved in the Rodney King case as an example of why police officers would be motivated to lie about their use of force against a defendant. *See id.* at 614–15. The trial court overruled the State's objections to the references, but gave the jury a limiting instruction that allowed it to consider the references only to the extent they related to the credibility of the police officers. *See id.* at 615. Credibility was at issue because the stories of the defendants and those of the police officers about the circumstances of the arrest varied greatly and because the prosecution had suggested that the defendants had a motive to lie. *See id.* at 609, 614–15. After deliberations, the jury found the defendants guilty of assault on a police officer. *See id.* at 610.

¶ 28 On appeal to this court, the defendants argued that the limitations on the use of the Rodney King references constituted prejudicial error. *See id.* at 615. This court affirmed, holding that "the trial court's re-

---

3. We express no opinion on whether the parties are correct in their interpretation of section 30-2-11(1)(a).

4. Mrs. Boyle does not argue on appeal that her claim can proceed under either of the other statutory prongs—paralysis of an extremity or significant disfigurement. *See* Utah Code Ann. § 30-2-11(1)(a)(i)-(ii) (Supp.2008).

strictions on defense counsel's references to the 'Rodney King' officers were not improper." *Id.* On certiorari, the supreme court agreed that "the trial court properly restricted certain references to Rodney King as material the jury should not consider." *State v. Alonzo,* 973 P.2d 975, 981 (Utah 1998). However, neither this court nor the supreme court was asked to consider the issue present here—whether the references to the unrelated case were proper at all.

¶ 29 After acknowledging the broad latitude generally available in presenting closing arguments, the supreme court in *Alonzo* stated, "[S]uch latitude does not extend to counsel calling the jury's attention to material that the jury would not be justified in considering in its verdict." *Id.* at 981. Indeed, the opinion issued by this court, which was affirmed by the supreme court, is more explicit:

> Although counsel has considerable latitude in closing arguments, the trial court could have reasonably concluded that defense counsel was exceeding the bounds of this discretion when counsel referred to the Rodney King officers. *The trial court could have determined that defense counsel's references to Rodney King were an attempt to inflame the jury or suggest that because the Rodney King officers were found guilty, the officers in this case were also guilty of using excessive force.*

*Alonzo,* 932 P.2d at 615 (emphasis added). If the trial court could have excluded the references entirely as inflammatory, it is not surprising that the limitations placed on the use of the Rodney King argument did not constitute prejudicial error.

¶ 30 Moreover, in *Alonzo,* the Rodney King references could be considered by the jury only in weighing the credibility of the police officers and their motive to lie. *See id.* at 615–16. These matters were legitimately at issue due to the differences between the testimony of the officers and that of the defendants, and by the State's suggestion that only the defendants had a motive to lie. Here, there is nothing relevant about the *Liebeck* case. Christensen's closing argument suggests that the allegedly excessive verdict in *Liebeck* was caused by that jury's use of a per diem analysis like the one Mr. Boyle had proposed in this case. As Mr. Boyle correctly notes, however, the damages perceived by members of the public to be excessive in *Liebeck* were punitive damages and did not involve a per diem analysis. *See Liebeck v. McDonald's,* No. CV–93–02419, 1995 WL 360309, at *1 (N.M. Dist. Aug.18, 1994). Thus, unlike the Rodney King references in *Alonzo,* the reference to *Liebeck* had no arguable relevance to this case.

¶ 31 Under these circumstances, I would hold that the references to the McDonald's coffee case improperly "call[ed] the jury's attention to material that the jury would not [have been] justified in considering in its verdict." *Alonzo,* 973 P.2d at 981. Moreover, the fact that the *Liebeck* case is "iconic," "synonymous with excessive verdicts," or even infamous would make me more inclined to find its use in oral argument improper rather than less so inclined. *Supra* ¶ 17.