2011 UT 20

**John BOYLE & Norrine Boyle, Plaintiffs and Appellants,**

v.

**Kerry CHRISTENSEN, Defendant and Appellee.**

**No. 20090822.**

Supreme Court of Utah.

April 15, 2011.

Roger P. Christensen, Karra J. Porter, Scot A. Boyd, Salt Lake City, for plaintiffs.

Kristin A. VanOrman, Jeremy G. Knight, Pamela E. Beatse, Salt Lake City, for defendant.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶1 Mr. Boyle was hit by a truck and injured while walking in a crosswalk. Mr. Christensen, the driver, admitted liability, but the case went to trial on damages. Not satisfied with the jury award, Mr. Boyle appealed, and the court of appeals affirmed the district court decision in all respects. Mr. Boyle sought certiorari review regarding

three issues. He argues that (1) the district court provided inadequate voir dire questioning, (2) opposing counsel's improper reference to the "McDonald's coffee case"[1] in closing argument warrants reversal, and (3) Mrs. Boyle's related loss of consortium claim was improperly dismissed. We hold that the court of appeals was correct in deciding that Mr. Boyle did not properly preserve the voir dire issue for appeal, because he neither objected to the district court's voir dire questions nor asked for additional questions when he could have done so. However, the court of appeals incorrectly affirmed on the other two issues. We conclude that the reference to the McDonald's coffee case was irrelevant and improper. We reverse and remand for a new trial because, under the circumstances, the reference had a reasonable likelihood of influencing the jury verdict to Mr. Boyle's detriment. We also find that the dismissal of Mrs. Boyle's loss of consortium claim was improper, because there were disputed issues of fact (or at least disputed reasonable inferences therefrom) as to whether there was a qualifying injury as defined by statute.

## BACKGROUND

¶ 2 Appellants Mr. and Mrs. Boyle are husband and wife. Mr. Boyle was hit by a truck while walking in a crosswalk in a grocery store parking lot. Mr. Boyle sustained injuries that led to back surgery. For months he could not work and therefore lost his job. He now suffers from chronic pain that has multiple consequences, including an inability to sleep through the night, sleep in a bed, drive for extended periods, work an eight-hour day, or perform certain work-related tasks such as lifting two buckets of golf balls at once. He is now working for a new company in the same general industry he worked for before and for the golf shop where he worked before the injury, but with modified income potential and reduced abilities (mentally because of the lack of sleep and constant pain, and physically because he is unable to lift buckets of golf balls, drive for extended periods, or work a full eight-hour

shift). He was once a professional golfer, and the back injury has also affected his golf game.

¶ 3 Mr. Boyle brought a negligence action against Mr. Christensen, who admitted liability. The case went to trial on the question of appropriate damages. Before trial, Mrs. Boyle also brought a claim for loss of consortium, which the district court dismissed. The grounds for dismissal were that Mrs. Boyle could not show that Mr. Boyle had suffered a qualifying injury under Utah Code section 30–2–11(1).

¶ 4 In the jury selection process, both parties submitted voir dire questions. The judge combined and revised the questions, omitting some of Mr. Boyle's questions that addressed jurors' views on tort reform issues. It is unclear from the record (and disputed in the briefs before this court) whether the district court provided copies of its own voir dire questions to the parties before it began questioning the potential jurors. During the jury selection process, Mr. Boyle's counsel neither objected to the omission of any questions nor asked for additional questions, even when given the opportunity to do so. Mr. Boyle does not dispute that no such attempt was made either before the jury or in the judge's chambers.

¶ 5 During closing argument, Mr. Christensen's counsel referred for the first time in trial to the McDonald's coffee case. Mr. Christensen's counsel incorrectly represented that both the McDonald's coffee case and the case at hand involved an effort at a per diem analysis in determining damages. Mr. Boyle's counsel immediately objected that the case was not in evidence and was prejudicial; his objection was noted but overruled. In the limited time allowed for Mr. Boyle's response, his counsel tried to mitigate the impact of this statement by explaining that the judge in the McDonald's coffee case reduced the ultimate verdict. Mr. Boyle's counsel did not explain how the facts of the case had been misrepresented.

¶ 6 The jury verdict was for a total of $62,500. The jury awarded $29,700 for past

---

1. The case referenced here is a New Mexico lawsuit, *Liebeck v. McDonald's Rests., P.T.S., Inc.*, No. CV–93–02419, 1995 WL 360309 (N.M.Dist. Ct. Aug. 18, 1994), which is referred to as the "McDonald's coffee case" throughout this opinion.

economic damages, $5,000 for future economic damages, and $27,800 for noneconomic (or pain and suffering) damages. Mr. Boyle had asked for $56,934 in past economic damages, $31,790 in future economic damages, and $370,000 for pain and suffering—a total of $458,724.

¶ 7 Mr. and Mrs. Boyle appealed, and the court of appeals affirmed. *Boyle v. Christensen*, 2009 UT App 241, 219 P.3d 58. The Boyles then petitioned this court for certiorari review. We have jurisdiction under Utah Code section 78A–3–102(3)(a) (Supp.2010).

## STANDARD OF REVIEW

¶ 8 "On certiorari, we review the court of appeals' decision for correctness." *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 19, 215 P.3d 143.

¶ 9 The court of appeals outlined the proper standards of review for each issue in this case. For challenges to the trial court's management of jury voir dire, an abuse of discretion standard was appropriate, but "alleged deficiencies in voir dire must [have been] brought to the district court's attention in order to be preserved for appeal." *Boyle v. Christensen*, 2009 UT App 241, ¶ 7, 219 P.3d 58. Challenges regarding " 'whether remarks made during closing argument improperly influenced the verdict' " also are reviewed under an abuse of discretion standard. *Id.* ¶ 8 (quoting *Green v. Louder*, 2001 UT 62, ¶ 35, 29 P.3d 638). Finally, "a trial court's ruling on a motion to dismiss [is reviewed] for correctness, according no deference to the trial court." *Id.* ¶ 9 (internal quotation marks omitted); *J.S. v. P.K. (In re Adoption of I.K.)*, 2009 UT 70, ¶ 7, 220 P.3d 464.

## ANALYSIS

¶ 10 First, Mr. Boyle claims that the court of appeals erred in holding he did not preserve the jury voir dire issue for appeal. Furthermore, he argues that the district court abused its discretion in eliminating his proposed tort reform questions. We need not reach the latter point because we affirm the court of appeals on the former. Second, Mr. Boyle argues that the reference to the McDonald's coffee case in closing argument

was improper and warranted reversal. We agree that, under the circumstances in this case, the improper reference had a reasonable probability of affecting the outcome to Mr. Boyle's detriment, thus requiring a new trial. Third, Mrs. Boyle argues that her loss of consortium claim was improperly dismissed. Because there were issues of fact (or at least issues of the reasonable inferences properly to be drawn therefrom) as to whether Mr. Boyle had suffered a qualifying injury, we agree that Mrs. Boyle's claim was erroneously dismissed.

## I. MR. BOYLE FAILED TO PRESERVE THE VOIR DIRE ISSUE FOR APPEAL

¶ 11 The court of appeals correctly concluded that Mr. Boyle failed to preserve for appeal the claim that voir dire questioning was inadequate. The claim was not preserved because Mr. Boyle's counsel never objected that the district court's questions insufficiently addressed tort reform, nor did he seek additional questioning during the voir dire process before affirmatively approving the jury selected. In approving the composition of the jury, he was implicitly approving the process by which the jury had been selected. We have stated that

> [i]f a party is dissatisfied with the thoroughness of voir dire ... that party may ... propose additional questions, or ask the court for further questioning. But where a party affirmatively expresses to the trial court his assent to the composition of the jury, that party cannot challenge the composition of the jury on appeal.

*State v. Lee*, 2006 UT 5, ¶ 18, 128 P.3d 1179 (citation omitted). Using the same logic, Mr. Boyle cannot approve the composition of the jury and later challenge the process used to select it unless he has registered a relevant objection.

¶ 12 In spite of this rule, Mr. Boyle argues that (1) the tort reform questions that he submitted to the judge before voir dire should be sufficient alone to preserve the issue on appeal, and (2) there was no oppor-

tunity to object or request additional questions during voir dire. We disagree.

¶ 13 In arguing that his submitted tort reform questions should be sufficient to preserve the appeal, Mr. Boyle relies on Utah Rule of Civil Procedure 46:

> Formal exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

Relying on this rule, Mr. Boyle claims he was not required to object to the district court's voir dire questions because they constituted a "ruling or order," and Mr. Boyle had already submitted differently formulated questions before the district court decided on its own list.

 ¶ 14 The problem with this reasoning is that the district court's list of voir dire questions did not constitute a "ruling or order" as those terms are used in rule 46. Voir dire questions cannot be fully defined until after the voir dire process is completed. Until that point, the district court may agree to additional or revised questioning. Here, the district court accepted questions from both parties, and then constructed its own questions in an effort to accommodate both sides. The district court's new questions presented a new issue to the parties: did the revised questions sufficiently address both parties' concerns and legal entitlements? If Mr. Boyle believed the tort reform issues had been inadequately addressed in the district court's new questions, he had an obligation to notify the district court so it could examine the issue. As we have stated:

In order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue. This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding. For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority. Issues that are not raised at trial are usually deemed waived.

*438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (citations omitted) (internal quotation marks omitted); *see also* UTAH R.APP. P. 24(a)(5)(A) (requiring an appellant's brief to contain a "citation to the record showing that the issue was preserved in the trial court"). Where parties fail to object to inadequate questioning in voir dire, the district court cannot be expected to second-guess that silence. It is not unreasonable to require attorneys to voice concerns they have regarding voir dire questions at the time of voir dire so that the district court can immediately address the issues, rather than allow them to remain silent and appeal later. This approach conserves judicial resources and promotes speedy justice for all concerned.[2]

¶ 15 Mr. Boyle claims that even were he required to make some objection, he was given no reasonable opportunity to do so. After reviewing the transcript of the jury selection in this case, we disagree. We find there were multiple opportunities for an objection or request for additional questioning. If Mr. Boyle had an advance copy of the district court's revised questions (a fact disputed by the parties and unclear from the record), he could have voiced his concern when the district court judge asked both parties whether they were ready to proceed. However, even if he did not receive the ques-

---

2. Mr. Boyle has argued that *Bee v. Anheuser-Busch, Inc.* supports his position because in that case the attorney did not place an objection on the record regarding the denial of his tort reform questions—the attorney merely objected to the judge in a sidebar. 2009 UT App 35, ¶ 4, 204 P.3d 204. This case is distinguishable in that Mr. Boyle's counsel gave no indication of his objection during voir dire. However, we also clarify that an objection must be made on the record to be preserved for appeal.

tions in advance, he heard the questions posed to each juror. When asked whether he had challenges for cause, Mr. Boyle's counsel could have registered his concern. Indeed, when opposing counsel was asked whether she had additional challenges for cause, she said she wanted to further question one of the jurors and was allowed to do so. Even when Mr. Boyle's counsel was asked whether he had further questions of that same juror, he did not raise his concern. Furthermore, both counsel met with the district court judge in chambers during a recess as soon as the judge had finished his original questioning of the jurors and before asking the attorneys whether they had challenges for cause. Presumably, if Mr. Boyle's counsel had concerns about making legal arguments to the judge before the jury, he could have registered his concerns with the judge in this conference, and, if the judge were unrelenting, he could have placed his objection on the record upon return to the courtroom.[3]

¶ 16 Mr. Boyle has argued that if he did not preserve the voir dire issue for appeal, we should apply a plain error review. We will not do so because, "where the appellant affirmatively proclaims the acceptability of the jury in the trial court," the doctrine of invited error applies and denies appellate review. *Lee*, 2006 UT 5, ¶¶ 16–20, 128 P.3d 1179; *see also State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (noting that parties invite error where they affirmatively represent to the court that they have no objection). When Mr. Boyle's counsel made no objections regarding inadequate questioning and then affirmatively passed the jury for cause[4] stating that he had no objection to discharging the remaining panel members, this qualified as an affirmative representation that there were no objections based on inade-

quate questioning in voir dire. Because any error by the district court regarding inadequate questioning was therefore invited error, we refrain from a plain error analysis and affirm the court of appeals on this issue.

## II. DEFENDANT'S COUNSEL'S ALLUSION TO THE MCDONALD'S COFFEE CASE DURING CLOSING ARGUMENT WAS IMPROPER AND WARRANTS REVERSAL

¶ 17 Mr. Boyle has argued that opposing counsel's reference to the McDonald's coffee case during closing arguments was improper and warrants reversal. Where counsel makes improper remarks during closing arguments, we will reverse only if "absent the improper argument, there was a reasonable likelihood of an outcome more favorable to the" complaining party. *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989). Granting a new trial is an extreme remedy that we do not provide lightly, but, for the reasons described below, we agree with Mr. Boyle that the reference here was both improper and reasonably likely to prejudice the jury, thus warranting reversal.

### A. The Reference to the McDonald's Coffee Case Was Improper

¶ 18 We grant both sides "considerable latitude in their closing arguments .... to fully discuss from their perspective the evidence and all inferences and deductions it supports." *Id.* However, that "latitude does not extend to counsel calling the jury's attention to material that the jury would not be justified in considering in its verdict." *State v. Alonzo*, 973 P.2d 975, 981 (Utah 1998). For example, comments meant to inflame passion or prejudice in the jury would be improper because they divert the

---

**3.** Mr. Boyle argues that "by penalizing Mr. Boyle for passing the jury 'for cause,' the court of appeals is conflating the peremptory and for-cause phases of jury selection.... [T]ort reform questions are pertinent to the exercise of peremptory challenges." This argument misses the point. The problem is that Mr. Boyle never registered an objection at any point in the proceedings, even when he had reasonable opportunities to do so. If he had wanted to preserve the issue for appeal, he should not have approved

the jury without registering an objection at some point during the jury selection process.

**4.** When Mr. Boyle's counsel was asked if he passed the jury for cause, he stated, "Yes, to the extent we've questioned the jurors." This does not qualify as registering an objection where counsel never attempted to ask for additional questions after being presented with or hearing the district court's revised questions.

jury from its duty to base its verdict on the evidence presented. *See, e.g., State v. Alonzo,* 932 P.2d 606, 615 (Utah Ct.App.1997) (explaining that the trial court may have properly limited counsel's reference to the Rodney King incident if it "were an attempt to inflame the jury or suggest that because the Rodney King officers were found guilty, the officers in this case were also guilty of using excessive force"), *aff'd,* 973 P.2d 975.

¶ 19 Here, during closing argument, Mr. Christensen's counsel referred to Mr. Boyle's requested pain and suffering damages and said the following:

> Ladies and gentlemen, they want a lot of money for this. A lot of money. What's been written on the board is called a per diem analysis.... How many days has it been since the accident? How many days for the rest of his life. And how much per day is that worth? That's what's been done here. That's how we get verdicts like in the McDonald's case with a cup of coffee.

Mr. Boyle's counsel immediately objected that the reference to this case was "prejudicial and ... not in evidence." His objection was noted but overruled.

¶ 20 Before we analyze this statement, it may be useful to explain the cultural context of the McDonald's coffee case, more formally known as *Liebeck v. McDonald's Restaurants, P.T.S., Inc.*[5] Few cases have ever achieved as much notoriety among the general public of this country as the McDonald's coffee case, fueled by its wide-ranging and repeated publicity in national and local news media. It has been mocked in extremely popular entertainment television, including *The Tonight Show, The Late Show,* and *Seinfeld.* It has been debated on talk shows, parodied in television commercials, mentioned in congressional debates, and is firmly lodged in the public consciousness. Mark B. Greenlee, *Kramer v. Java World: Images, Issues and Idols in the Debate over Tort Reform,* 26 CAP. U.L.REV. 701, 702–03 (1997). "What made the headlines and what is most commonly recalled by the general populace about the ... case is the size of the verdict and the source of the injury—$2.9 million for

spilled coffee." *Id.* at 718. In U.S. popular culture, the case has come to symbolize greedy plaintiffs and lawyers who file frivolous lawsuits and win hugely excessive sums in a broken legal system. *See, e.g.,* Peter G. Angelos, Commentary, *1996 Spring Commencement Speech,* 27 U. BALT. L.F. 19, 21 (1996); Michael McCann, William Haltom & Anne Bloom, *Java Jive: Genealogy of a Juridical Icon,* 56 U. MIAMI L.REV. 113, 115 (2001).

¶ 21 Although the public view of the case is understandable when limited to a superficial view of its facts, a deeper look at the details and issues in the case may dramatically alter one's perspective. Among the many relevant facts generally missing from the public consciousness are the following:

(1) The temperature of the spilled coffee was so hot—180 to 190 degrees—that within seconds it caused third-degree burns that extended through the skin to the fat, muscle, or bone on Ms. Liebeck's thighs, buttocks, and groin area. She was hospitalized for eight days, underwent skin grafts, was disabled for two years following the accident, and was permanently disfigured with scars on over 16 percent of her body. *See* Greenlee, *supra,* at 718–19; *see also* Angelos, *supra,* at 21; Brian Timothy Beasley, *North Carolina's New Punitive Damages Statute: Who's Being Punished, Anyway?,* 74 N.C. L.REV. 2174, 2190 (1996).

(2) The jury heard evidence that McDonald's had received approximately 700 other complaints about coffee-burn injuries in the previous decade (some of which were settled for a total outlay of over $500,000), but considered the number of injuries statistically insignificant and therefore did not lower the temperature of its coffee. *See* Marc Galanter, *An Oil Strike in Hell: Contemporary Legends About the Civil Justice System,* 40 ARIZ. L.REV. 717, 732 (1998); Greenlee, *supra,* at 719–22.

(3) The jury awarded $2.7 million in punitive damages because it believed the extreme temperature of the coffee was un-

---

5. *See supra* note 1.

reasonably dangerous and that McDonald's had callously disregarded the danger even after hundreds of injuries. The $2.7 million figure was based on the approximate revenues from *just two days of McDonald's coffee sales.* Shari Seidman Diamond, *Truth, Justice, and the Jury,* 26 HARV. J.L. & PUB. POL'Y 143, 146–47 (2003).

¶ 22 Given the uniquely iconic nature of this case, the passion it has produced in the media, and the general misunderstanding of the totality of its facts and reasoning among the public, we find it hard to imagine a scenario where it would be proper for a party's counsel to refer to it before a jury. Generally, as here, such a reference would seem to have the sole purpose of recalling the public outrage over isolated elements of the case—thus improperly appealing to a jury's passions. It is not the jury's job to make legal determinations, so no legal arguments from the case are relevant. The facts in the McDonald's coffee case were not in evidence before this jury and were also utterly irrelevant. Indeed, the one attempt counsel made to make her reference seem relevant was a misrepresentation because the high punitive damages award in the McDonald's coffee case had nothing to do with a per diem analysis. It is certainly unfair to require the other party to clarify all the misconceptions about this irrelevant case in the limited time allotted for closing argument. The great latitude provided in closing arguments regards reasonable inferences about evidence properly before the jury and does not extend to misrepresentations or efforts to appeal to a jury's passions. Thus the reference to the McDonald's coffee case in closing argument was improper.

B. *Absent the Improper Reference to the McDonald's Coffee Case, There Was a Reasonable Likelihood of a More Favorable Outcome for Mr. Boyle*

¶ 23 It is a difficult task to rewind the clock and determine whether a jury verdict might have been different had some things not been said. But we are not required to make that determination in absolute terms. Instead, to determine whether reversal is warranted, the test is whether "absent the improper argument, there was a reasonable likelihood of an outcome more favorable to the" complaining party. *Dibello,* 780 P.2d at 1225. Given the latitude generally provided in closing argument, and the extreme nature of the remedy of granting a new trial, we will not reverse simply because statements were improper. There must be a showing of a "reasonable likelihood" that there was actual prejudice in the outcome. We have defined the words "reasonable likelihood" as " 'a probability sufficient to undermine confidence in the outcome.' " *State v. Knight,* 734 P.2d 913, 920 (Utah 1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). It falls somewhere on a spectrum between absolute certainty of influence on the verdict and the mere possibility of such. *See Brown v. Div. of Water Rights,* 2010 UT 14, ¶ 20, 228 P.3d 747.

¶ 24 Although the improper reference was likely made with the intent to influence the jury, whether it had a reasonable likelihood of actually doing so is the question at issue. Here, a number of factors convince us there was a reasonable likelihood of a better verdict for Mr. Boyle absent the improper reference to the McDonald's coffee case: (1) the iconic nature of the case that has aroused such public passion, as described earlier in this opinion; (2) the fact that the trial judge did not sustain the objection, thus allowing the jury to believe it was proper to consider the McDonald's coffee case when deciding the verdict; (3) the misrepresentation of the McDonald's coffee case as a per diem analysis that could have convinced the jury it was similar to the case at hand when it was not; and (4) the size of the pain and suffering damages awarded by the jury, which certainly could have been the product of entirely rejecting a per diem analysis in response to the McDonald's coffee case comparison.

¶ 25 We need not and do not decide whether any of these factors alone would have been enough to overturn the verdict. But each additional factor takes us further on the spectrum from mere possibility toward greater probability that the statement had some negative influence on the verdict for Mr. Boyle. Taken together, these factors are

sufficient to convince us that there was at least a reasonable likelihood of a more favorable verdict for Mr. Boyle absent the improper reference. The erroneous reference "might be compared to a drop of ink placed in a vessel of milk. It cannot long be seen, but it surely remains there to pollute its contents." *Pearce v. Wistisen*, 701 P.2d 489, 494 (Utah 1985). The court of appeals thus should have found an abuse of discretion in allowing the McDonald's coffee case remarks. We therefore reverse the court of appeals' decision on this point and remand the case to the district court for a new trial.

## III. IT WAS ERROR TO DISMISS MRS. BOYLE'S LOSS OF CONSORTIUM CLAIM

¶ 26 Mrs. Boyle argues that the district court erred when it dismissed her loss of consortium claim. The district court did so, and the court of appeals affirmed, based on an erroneous interpretation of the statute at issue.[6] The relevant statute states that "[t]he spouse of a person injured by a third party ... may maintain an action against the third party to recover for loss of consortium." UTAH CODE ANN. § 30-2-11(2) (Supp.2010).[7] The statute defines such injury as

a significant permanent injury to a person that substantially changes that person's lifestyle and includes the following:

(i) a partial or complete paralysis of one or more of the extremities;

(ii) significant disfigurement; or

(iii) incapability of the person of performing the types of jobs the person performed before the injury.

*Id.* § 30-2-11(1)(a).

¶ 27 When interpreting a statute, we look first to its plain language and "presume that the legislature used each word advisedly and read each term according to its ordinary

and accepted meaning.... [I]f the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed." *State v. Harker*, 2010 UT 56, ¶ 12, 240 P.3d 780 (internal quotation marks omitted). Here, the plain language defines an injury as "a significant permanent injury to a person that substantially changes that person's lifestyle." UTAH CODE ANN. § 30-2-11(1)(a). The parties interpreted the words "and includes" (which follow that definition) to introduce an exhaustive list of examples. This was incorrect. When "including" precedes a list, its common usage is to indicate a partial list. *See* BLACK'S LAW DICTIONARY 777-78 (8th ed. 2004). Had the legislature wished to limit the definition of injury to only the three listed scenarios, it could easily have stated "must include" rather than "includes." The structure of the statute also supports this interpretation because the examples are listed as a subset of the definition. If these were the only consortium claims to be honored, the overlying definition would be superfluous. Furthermore, the parties' definition would, for example, likely exclude a claim where impotence was at issue, thus providing no remedy for loss of sexual relations between spouses—one of the more common definitions of loss of consortium. *See id.* at 328. Had this been the legislature's intent, we believe it would have stated so clearly. Because the statute does not say "must include," we interpret the list of examples as just that—examples that satisfy the definition previously stated, but not an exclusive list. *See Mouty v. Sandy City Recorder*, 2005 UT 41, ¶ 39, 122 P.3d 521 ("The legislature's use of the word 'includes' indicates that the [subsequent] examples listed were not necessarily meant to be exhaustive.").

¶ 28 The parties argued at length over whether changes in Mr. Boyle's abilities post-accident could constitute "incapacity" to do the same "types of jobs" he could perform

---

6. The court of appeals actually "express[ed] no opinion on whether the parties are correct in their interpretation of section 30-2-11(1)(a)" but accepted the parties' erroneous interpretation for purposes of the opinion. *Boyle v. Christensen*, 2009 UT App 241, ¶ 21 n. 3, 219 P.3d 58.

7. Because there has been no substantive change that affects the issues in this case, we refer to the current version of the statute.

before the injury under the statute. *See* UTAH CODE ANN. § 30–2–11(1)(a)(iii). We do not need to reach this question,[8] because, as explained above, while meeting this standard would be sufficient to constitute an injury, all that is required is that there was "a significant permanent injury to a person that substantially changes that person's lifestyle." In this case, opposing counsel conceded in a hearing before the district court that there were facts in dispute regarding whether there was such a significant injury to Mr. Boyle that it substantially changed his lifestyle.[9] That concession precluded dismissal. Both parties were mistaken that there also needed to be issues of fact about at least one of the three examples provided by the statute.

## CONCLUSION

¶ 29 We affirm the court of appeals' decision that Mr. Boyle failed to preserve for appeal the claim that voir dire questioning was inadequate. However, we conclude that the improper reference to the McDonald's coffee case in Mr. Christensen's closing argument had a reasonable likelihood of prejudicing the jury and producing a less favorable outcome for Mr. Boyle. We therefore reverse and remand for a new trial. On remand, Mrs. Boyle's claim for loss of consortium should be reinstated because there are issues of fact in dispute regarding whether there was an injury under the relevant consortium statute.

¶ 30 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and

---

Justice LEE concur in Chief Justice DURHAM's opinion.

---

**8.** We do note, however, that in interpreting this standard the district court and court of appeals were too narrow in their definitions of "incapacity" and "types of jobs." We agree with the analysis of *Spahr v. Ferber Resorts, LLC,* that "[r]ather than being literally and completely incapable of doing a job even in a most limited and extraordinary way, then, being unable to engage in an essential part of a job in a routine manner must suffice to make one incapable of performing that job under the statute." 686 F.Supp.2d 1214, 1220 (D.Utah 2010). The fact that Mr. Boyle works in the same type of industry as before the injury would not necessarily mean he has the same type of job. Inability to work the same hours or perform some of the same tasks

he could perform before may, in certain circumstances, constitute an injury under the statute. Where the facts regarding present and previous jobs are not disputed, there may still be reasonable inferences in dispute (derived from the undisputed facts) that must be left to the jury.

**9.** Counsel for Mr. Christensen acknowledged that there must "be a significant permanent injury that substantially changed the plaintiff's life, Mr. Boyle's life. That I would [agree] is in dispute in this case so there are issues of fact on that. However, taking that aside, the other criteria that must be met. . . ."